### SECOND RELIGIOUS SOCIETY OF BOXFORD *vs.* DANIEL F. HARRIMAN.

Essex. Nov. 8, 1877. — Sept. 5, 1878. MORTON & SOULE, JJ., absent.

A case stated, whereby it is agreed that judgment shall be for the plaintiff, if the action can be maintained in any form, "either at law or in equity," waives all questions of form and process.

A testator by his will gave $1500 to a parish "to build and support a public school for the education of children as the law now directs, to be located as near a certain meeting-house as land could be purchased for a reasonable price. The parish, in 1864, voted to accept the gift, chose a committee of its members, of which A

was chairman, to receive it, and subsequently, without leave of court, voted, in 1865, to relinquish the trust fund to that school district within it nearest the meeting-house. The district, having accepted the fund, chose a committee of its inhabitants, of which A. was also chairman, to administer it. A. continued to hold the fund, his associates disclaiming any interest in it, as a trust fund. *Held,* in an action brought in 1875, that the gift was a public charity; that the parish might recover possession of such trust fund; and that the statute of limitations had not begun to run in A.'s favor.

CONTRACT for money had and received. Writ dated April 29, 1875. The answer set up the statute of limitations. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts in substance as follows:

The will of Ephraim Foster of Boxford, dated January 3, 1835, contained, besides other provisions, the following:

" And further at the decease of my said wife Orissa, all of the above property left in trust for her benefit shall be disposed of as follows, that is, fifteen hundred dollars of the same shall be given to the West Parish in Boxford to build and support a public school for the education of children as the law now directs. Said school-house to be located as near the meeting-house where the Rev. Dr. Eaton now preaches, as a piece of land for that purpose can be purchased at a reasonable price." The testator died on February 5, 1835, and the will was admitted to probate on March 10, 1835. His widow died in May, 1864.

The records of the Second Parish in Boxford, which was the West Parish, contain no mention of this legacy, until the warrant dated May 27, 1864, for a legal meeting of the voters of the parish, on June 6, 1864, which contained the following article:

" 5th. To see if the parish will vote to accept the legacy given to the West Parish in Boxford, by the will of Ephraim Foster, late of Boxford, and appropriate the same for the purposes for which it was given, and, if so, to choose a committee and authorize them to receive said legacy, and cause the same to be expended. agreeably to the conditions specified in said will." At this meeting duly held on June 6, it was voted : " To accept the legacy given the West Parish in Boxford, by the late Ephraim Foster, and to choose a committee to receive and expend the same as the parish shall instruct; " and Daniel F. Harriman, John F. Kimball, and Joshua T. Day, were chosen a committee. Of this

committee, Harriman is the defendant. Kimball has not resided in the parish for five years and has no interest in the society, and Day is dead.

The next mention of said legacy in the parish records is in the warrant, dated May 11, 1865, calling a meeting of the voters of the parish on May 19, and containing the following articles : " 2d. To see if the parish will vote to appropriate the legacy bequeathed the West Parish in Boxford, by the late Ephraim Foster, for educational purposes, in what has been known as the Seventh School District in Boxford, or take any order on the subject when assembled. 3d. To see if the parish will allow the income of the legacy bequeathed the West Parish in Boxford, by the late Ephraim Foster, for educational purposes the past year, to be expended in the above named school district the present school year. 4th. To see what further instructions the parish will give their committee in relation to the bequest of the late Ephraim Foster to the West Parish in Boxford for educational purposes."

At this meeting held on May 19, 1865, it was voted " To instruct the committee to purchase the land and house according to the letter of the will." " That the parish relinquish the legacy bequeathed by the late Ephraim Foster to the West Parish in Boxford for educational purposes to what has been known as the Seventh School District in Boxford." "That the parish relinquish, to what has been known as the Seventh School District in Boxford, the interest which has accrued upon the fund bequeathed by the late Ephraim Foster to the West Parish in Boxford for educational purposes."

The Seventh School District was the nearest to the meeting-house named in the will.

A warrant dated June 24, 1865, called a meeting of the voters of the parish on July 1, 1865, to act upon, among others, the following articles : " 2d. To see what action, if any, is necessary to authorize by proper limitations the Seventh School District in Boxford (said district being a part of said parish) to use and expend said legacy in accordance with the views of said Foster as expressed in his will, and to authorize said school district to use and expend said legacy. 3d. To reconsider, if deemed necessary for the purposes expressed in the above arti-

cle, any votes passed at a meeting of said parish held on said 19th day of May, 1865. 4th. To give definite and specific instructions to the committee having in charge said legacy as to what they shall do in the matter of said legacy, and to authorize said committee to take such action and do such things as may be necessary to carry out the objects set forth in the second article above. By request of D. F. Harriman and others."

At this meeting duly held on July 1, 1865, the following votes were passed:

"Voted, That whereas the parish deeming that the views of Ephraim Foster, in reference to the legacy bequeathed by him to the parish for educational purposes, will be best carried out by transferring the expending and use of said legacy to what has been known as the Seventh School District in Boxford, said school district being a part of said parish, therefore, it is voted, that the expending of said legacy, with the interest accrued thereon, be given to said Seventh School District, with the right upon the part of said district to use said legacy in repairing, enlarging or rebuilding their school-house, and for the instruction of the scholars within the limits of said district at such place as shall best carry out the intentions of said Foster as expressed in his will."

"Voted, That the votes of the parish passed at the meeting held on the 19th day of May, 1865, whereby said committee having in charge said legacy were directed to purchase a lot of land and house, is hereby reconsidered and annulled."

"Voted, That the committee of the parish having in charge said legacy be instructed to deliver the money received by them under said legacy, with the interest accrued thereon, to such committee as the said Seventh School District shall appoint to receive the same."

Nothing further was done in reference to the fund by the parish, nor was the committee ever discharged, nor did they ever make a report to the parish, after the date of the last mentioned meeting.

At a legal meeting of the voters of the parish held in pursuance of a warrant, "to see what action the parish will take in regard to fund left by the late Ephraim Foster for the support of a school," held on April 6, 1875, it was

" Voted, That a committee of three be chosen by the parish to take all necessary steps for the legal procurement and acceptance of the fund bequeathed the parish by Ephraim Foster for educational purposes now in the hands of Daniel F. Harriman ; " and M. S. Jenkins, Isaac W. Archer, Nathaniel Gage, were chosen as the committee. On April 29, 1875, this committee by its chairman demanded, in behalf of the parish, the fund of the defendant, and the defendant declined to pay it, except upon a decree of the court as to whom it belonged.

At a town meeting called and held in Boxford, on March 6, 1865, " to see if the town will vote to unite the fifth, sixth and seventh school districts, or to unite either the fifth or sixth school district with the seventh, or take any action on the subject ; by request of Daniel F. Harriman and others," it was voted " to unite the fifth and seventh school districts."

At a town meeting called and held on March 22, 1865, " to see if the town will make null and void the vote whereby the fifth and seventh school districts were united at the last annual town meeting," it was voted " to make null and void the vote, whereby the fifth and seventh school districts were united at the last annual town meeting."

The fifth, sixth and seventh school districts were contiguous, and the only districts in the West Parish.

The records of the Seventh School District in Boxford show that a warrant dated July 1, 1865, for a meeting of the voters in the district, contained the following articles : " 2d. To see if the said district will vote to accept the legacy devised to the West Parish in Boxford for educational purposes by the late Ephraim Foster, and transferred by the said parish to what has been known as the Seventh School District in said Boxford. 3d. To choose a committee to receive said money and appropriate and expend it under said will, according to a vote of said parish, or take any order that they may think expedient when assembled."

At this meeting, duly held on July 8, 1865, the district voted, " To accept the said legacy in the warrant." " To choose a committee of three to receive said money and expend it according to the warrant; " and Daniel F. Harriman, Isaac W. Andrew and Moses Kimball were chosen by ballot. " That the committee be instructed to pay the outstanding bills accrued pertaining

to said legacy, and the residue, if any, to extending the winter term of school the current year."

At a meeting of the inhabitants of the Seventh School District, held on March 5, 1866, it was voted to accept the report of the committee, which stated how the fund was invested, how much of the income was spent and the balance on hand.

Nothing further appears upon the records of the school district in relation to the committee or to the fund. Since the passage of the St. of 1869, *c.* 110, abolishing " the school district system in this Commonwealth," the Seventh School District has not been reëstablished, nor has the school district system been reëstablished since that time in Boxford.

The defendant Harriman has had the custody of the fund since June 6, 1864. Of the committee appointed by the Seventh School District to receive the fund from the parish, Andrew and Kimball do not now claim to be members of the committee of the district, and claim no interest in or authority over the fund. The defendant is one of the heirs at law of Ephraim Foster.

Subsequently to March 22, 1865, the fifth and sixth school districts, before any action was taken by the committee chosen by the Seventh School District in reference to the fund, at meetings called for that purpose, voted to relinquish any claim such districts might have in the fund to the Seventh School District.

No question is made as to the legality of any of the foregoing meetings of the parish or the town of Boxford or of the Seventh School District, provided at the time the meetings were called the district had the power or right to call such meetings.

At the meeting of the Seventh School District, held on the 5th day of March, 1866, there were several members of said parish present when said report was read.

Since July 8, 1865, the defendant has always claimed to hold the fund as chairman of the committee of the Seventh School District appointed at the date.

The defendant paid $361.36 out of the fund for the support of schools in the Seventh School District while claiming to hold the said fund as chairman of its committee, and such sum was paid with the knowledge of some of the members of the parish.

If the statute of limitations was not a bar to the recovery by the plaintiff of the fund from the defendant, and if the plaintiff

could maintain an action therefor in any form of action, either at law or in equity, then judgment was to be entered for the plaintiff for the amount of the legacy and interest, after deducting the defendant's disbursements, the amount for which judgment was to be entered to be determined by an assessor; otherwise, judgment was to be entered for the defendant.

*J. C. Perkins & W. S. Knox*, for the plaintiff.

*E. T. Burley*, (*E. J. Sherman* with him,) for the defendant.

LORD, J.   By the agreed facts, we understand that the parties wish to waive all matters of form and of process, and to desire the opinion of the court upon the question, whether the plaintiff, at the day of the date of the writ, was entitled to the funds given to it by the will of the late Ephraim Foster. The question is not one of pleading, but is to be decided irrespective of the mode of proceeding; and if, in any process with proper parties in law or in equity, the plaintiff is entitled to hold and administer the trust created by the will, judgment is to be entered for the plaintiff, with this single qualification, that if, as against the defendant, the process is barred by the statute of limitations, judgment is to be entered for the defendant.

Upon the first question, we are of opinion that the plaintiff is entitled to the fund. The gift was a gift for charitable uses. In all the discussions upon the question, What is a charity? there has never been a question that education is a proper subject of a gift for charitable uses. The St. of 43 Eliz. *c.* 4, recognizes no charitable uses which are not now upheld, both in England and in this Commonwealth. In that statute are enumerated, in words, "schools of learning," "free schools," "scholars in universities," "education and preferment of orphans."

The beneficiaries are indefinite. The gift is not for the education of any particular person or persons. The parenthetical expression "as the law directs" we can construe only as designed to embrace all persons for whom the law then designed schools to be supported. If the gift had been for the support of poor persons, as the law now directs, the natural construction would be for such poor persons as by law towns are required to furnish support for. There can be no doubt, therefore, that the beneficiaries of the bequest are sufficiently indefinite to be the subject of a bequest for charitable uses.

No question is made by the defendant that the plaintiff is not competent to take and hold in trust for charitable uses. His claim is, that the plaintiff has fully executed the trust; if not exactly, at least *cy pres.*

This leads to inquiry into the legal effect of the action of the parish. It is quite probable that the purpose and intention of the plaintiff was to limit the benefits of the trust to such persons as should be resident within the Seventh School District. To do this, it conveyed the trust fund to the district, thereby surrendering all control of it, and permitting it to be administered by such district. If it were an absolute disposition of the fund, it would be a violation of duty. If, however, it was understood, as it seems to have been understood by all parties, as a mere substitution of the district for the parish, in order that the district might as trustee administer the trust, it was not competent for it to do so without the consent of a court of chancery, which it did not have. *Harvard College* v. *Society for Theological Education*, 3 Gray, 280.

The plaintiff accepted the trust. It has not administered it. Upon proper proceedings had, it would be compelled to account for the funds, and either to hold and administer the trust, or to pay the fund over to a new trustee, duly appointed.

The question submitted is, whether the plaintiff has authority to do that voluntarily, which it may by law be compelled to do; or rather, whether it may recover the property from one to whom it has wrongfully disposed of such property, instead of furnishing the necessary sum from its own resources. This must depend upon the circumstances of the case. We have no doubt that a trustee may so dispose of trust funds as that he cannot reclaim them, and we are equally clear that, under some circumstances, he may reclaim the fund, even though he has made what he intended should be an absolute and final disposition of it. It becomes necessary, therefore, to see what the facts are in the particular case. The defendant was a member of the plaintiff society; he was also an inhabitant of the Seventh School District, as well as an inhabitant of the town. When the plaintiff voted to accept the legacy, the defendant was chosen upon the committee to receive it, of which committee he seems to have been chairman; when the plaintiff proposed to transfer the

fund to the Seventh School District, and the district proposed to accept it, the defendant was chosen upon the committee of the district to receive it; of this committee he also seems to have been chairman, and at present is the only member of the committee, his associates disclaiming any authority to act or power over the fund. As chairman of the plaintiff's committee, the defendant received the fund and the nominal transfer of the fund to the district, involving no change in the actual custody of the fund. The defendant has had, since its receipt from the estate of Foster, the actual keeping and control of the fund, which he has kept specifically as the fund, and now holds. He has never contended that he has a personal property in the fund; but has always held it, claiming to hold it only as subject to the trust. This fund we think the plaintiff is entitled to hold. -

The various changes and attempts at change of the district, and the final abolition of the system of districts, and the merger of all district property in the town, we have not thought it necessary to discuss; for the reason that, as we understand the agreement of facts, no question is made as to the parties to the suit, but only the question, whether, in any proceeding at law or in equity, the plaintiff has a right to repossess itself of the fund.

Nor can we regard the statute of limitations as a bar to the claim against the defendant. He took the fund as a trust fund. The general rule of law is, that one holding a trust fund cannot avail himself of the statute of limitations to bar the claim of any person to such fund. He must show that in some open and notorious manner he has disclosed to the party in interest his purpose to hold the fund adversely to the trust, for a period of time long enough to bar the claim, and under circumstances in which he was subject to a suit for it. In this case there is no such evidence, nor any evidence that the defendant ever claimed the fund as his, but has always held it subject to the claim of the rightful owner. It is true that the report of the case finds that the defendant, ever since his appointment on July 8, 1865, " has claimed to hold said fund as chairman of the committee of the said Seventh School District; " but it is apparent that he was claiming it simply as a trust fund; for when it was demanded of him on April 29, 1875, he " declined to pay it, except upon a decree of the court, as to whom it belonged." It

is quite clear from this that, at least up to that date, he had made no claim to it except as a trust fund to be administered according to law; and we think that, at all events, the statute of limitations had not then begun to run.

Our opinion therefore is, that, by some suitable proceedings in law or in equity, the plaintiff is entitled to the fund, and that the statute of limitations is not a bar in favor of the defendant. And consequently, by agreement of the parties, judgment is to be entered for the plaintiff for such sum as may be agreed upon, or as shall be determined by an assessor.

*Judgment for the plaintiff.*