BENJAMIN PIPER and another, in equity, *vs.* LORENZO MOULTON, executor of the last will of ELISHA PIPER, and others.

## York.   Opinion March 10, 1881.

*Will.   Attesting witnesses.   Charity.   Perpetuities.   Charitable bequests.*

The wife of an executor not beneficially interested under the will is a credible attesting witness thereto.

An inhabitant of a town to which a bequest is made for the support of schools therein is a competent attesting witness.

The probate of a will, where the court has jurisdiction, is conclusive unless vacated by an appeal.

Towns or cities may hold in trust funds given for the purposes of education.

A testator made a bequest of one hundred dollars to a town, in trust, on condition, that the town should expend the income thereof, forever to keep his lot in a certain burying ground in good order and condition, and an iron fence around the same; and made another bequest to the town of the rest and remainder of his estate to establish a school fund, on condition, that said town should accept and perform the conditions as to his lot in the burying ground; *Held,*

1. That the bequest of the hundred dollars was not for a charitable use, and was void as creating a perpetuity.

2. That the bequest to establish a school fund was valid; the condition to keep the testator's lot in repair was a condition subsequent; the estate passes to the town subject to the condition subsequent if valid, if void or against law, discharged of the condition.

3. The bequest being on condition that the town erect a building for the Piper High School, that the town is authorized to raise the amount of money necessary for that purpose.

BILL in equity.

Heard on bill, answer and proof.

The opinion states the case.

*J. H. Hobbs*, for the plaintiffs, upon the question of perpetuity, cited: 1 Perry on Trusts, 472, 480–483; *Smith* v. *Dunwoody*, 19 Ga. 237.

The one hundred dollars bequest was void. A secondary bequest, depending upon a void bequest, fails. *Corlyes* v. *French*, 4 Ves. 418; 1 Jarman Wills, 248; *Rose* v. *Rose*, 6 Abbott's Dig. 178; 2 Redfield Wills, 565, 574, 531, 523; 22 Wend. 483.

The large bequest was not a public charity. *Attorney General* v. *Soule*, 28 Mich. 153.

A corporation cannot be trustee for purposes foreign to its institution. 15 N. H. 330.

The town of Parsonsfield has no authority to support or aid in supporting a free high school. *Hooper* v. *Emery*, 14 Maine, 375; *Bussey* v. *Gilmore*, 3 Maine, 191; 14 Allen, 585; *Gove* v. *Epping*, 41 N. H. 545; *Perkins* v. *Milford*, 59 Maine, 315.

The attesting witnesses to the will were disqualified. *Hawes* v. *Humphrey*, 9 Pick. 357.

That question is now open to us. *Bent's Appeal*, 35 Conn. 523; *Dickinson* v. *Hayes*, 31 Conn. 424.

*Ira T. Drew*, for the defendants, cited: 12 Mass. 358; 10 Allen, 153; 47 Maine, 474; *Hawes* v. *Humphrey*, 9 Pick. 350, *Warren* v. *Baxter*, 48 Maine, 193; 22 Pick. 215; 68 Maine, 380; *Drury* v. *Natick*, 10 Allen, 176; *Dexter* v. *Gardner*, 7 Allen, 243; *Att'y General* v. *Greenhill*, 33 Bea. 193.

APPLETON, C. J. Elisha Piper on September 19, 1876, made and executed his last will and testament. He died March 22, 1877. On the first Tuesday of June, 1877, his will was presented for probate and proved and allowed.

After referring to his heirs at law and declaring in the first item, that he shall not give them anything, the will proceeds as follows:

"All my estate is the result of my own earnings and of economy in the care and management of the same, and I feel that my relatives should not question my right to carry out what has been a well considered and settled purpose with me, viz: To dispose of my property in such a manner as will in my judgment do the most good and be of the greatest benefit in promoting popular

education, and whereas the town of Parsonsfield, in the county of York, aforesaid, is my native town, in which I have always felt a great interest, and the inhabitants thereof are interested in the maintenance of good schools, I feel safe in the creation of the trust hereinafter provided.

"Second, I give and bequeath to the inhabitants of Parsonsfield, in the county of York and State of Maine, the sum of one hundred dollars to have and to hold the same forever, in trust, for the following purposes, namely : to expend the interest and income as may be necessary to keep my lot in the Piper burying ground, situate at South Parsonsfield in good order and condition and an iron fence around the same in good repair and painted.

"Third, I give, bequeath and devise all of the rest and residue and remainder of my estate, both real and personal, after the payment of all my just debts and burial expenses to the inhabitants of the aforesaid town of Parsonsfield, to have and to hold the same in trust forever, and to be called the 'Piper school fund' to and for the uses and purposes hereinafter mentioned and declared, namely, that the interest and net income thereof shall be annually expended in aid of the support of a free high school in said Parsonsfield, that is to say, a school which shall be open and free to all residents of said Parsonsfield without charge for tuition, not intended, however, to restrict the right of said inhabitants to charge tuition for scholars admitted to said school, who are not residents of said Parsonsfield ; that no part of said money shall ever be expended in the erection or repair of school buildings, but the entire use, income and interest, arising and accruing from the estate hereby bequeathed, shall be forever expended for instruction and payment of incidental expenses, necessary for the support of said school.

"The expenditures of said money shall be under the direction and control of the superintending school committee of said Parsonsfield or such officers as may be by law provided in their stead ; this devise is upon the express and certain condition that the inhabitants of said Parsonsfield shall accept and perform the conditions named in the second article of this will."

The heirs at law bring this bill to determine the construction of and the effect to be given to the trusts declared in the will, at

the same time denying the will to have been duly attested by competent witnesses.

1. It is objected that the will was not properly executed, because the attestation of the testator's signature was by interested witnesses.

The wife of the executor was one of the attesting witnesses. But the executor was a competent witness at the time of the attestation of his wife. He might legally have been an attesting witness. *Jones* v. *Larrabee,* 47 Maine, 479. The husband not being then interested his wife was not "beneficially interested" under the will and was a "credible attesting witness."

The other attesting witnesses were inhabitants of Parsonsfield. But that fact would not prevent their being attesting witnesses. In *Eustis* v. *Parker,* 1 N. H. 273, this precise question arose in a case where the attesting witnesses were inhabitants of a town to which a bequest for the support of schools had been made and they were held competent. Their interest, as inhabitants was not direct and certain. If they might be benefitted by the reduction of taxes, which might thereafter be assessed, they might die, or move from the town and cease to be inhabitants of the same, at the time of a subsequent assessment. Their interest was contingent. *State* v. *Stuart,* 23 Maine, 111. The increased privileges of education do not constitute a disqualifying interest. *Warren* v. *Baxter,* 48 Maine, 195 ; *Hawes* v. *Humphrey,* 9 Pick. 350.

But if it were otherwise and the witnesses were to be deemed interested, the objection is not open to the complainants. The probate court had jurisdiction. If it erred, the error might be corrected on appeal. Whether the questions arising in the probate court were correctly or incorrectly decided as to the competency of evidence can never be made a matter of inquiry in a court of common law to affect that adjudication. *Patten* v. *Tallman,* 27 Maine, 17. The probate of a will is final and conclusive upon all parties. *Dublin* v. *Chadbourn,* 16 Mass. 433. The decisions of the judge of probate in all cases within his jurisdiction are conclusive against all the world unless vacated by an appeal. *Tibbetts* v. *Tilton,* 4 N. H. 121 ; *McLean* v. *Weeks,* 65 Maine, 411.

A trust for the support of schools or of a particular school as a high school, or for any purpose of general public utility is a valid trust. So towns can hold property in trust for purposes within the general scope of their corporate existence. Thus, towns and cities may hold property in trust for the purpose of educating the poor, and the relief of those who are poor and not paupers. *Sutton* v. *Cole*, 3 Pick. 232 ; *Webb* v. *Neal*, 5 Allen, 575 ; *Everett* v. *Carr*, 59 Maine, 325 ; *Vidal* v. *Gerrard*, 2 How. 188 ; *Drury* v. *Natick*, 10 Allen, 169 ; *Second Religious Society in Boxford* v. *Harriman*, 125 Mass. 321 ; *Attorney General* v. *Butler*, 123 Mass. 305 ; stat. 1873, c. 92.

But the devise to the inhabitants of Parsonsfield was "upon the express and certain condition that the inhabitants of said Parsonsfield shall accept and perform the conditions named in the second article of this will."

Those conditions are that said inhabitants should have and hold forever the sum of one hundred dollars in trust to expend the interest and income as may be necessary to keep the testator's lot in the Piper burying ground in South Parsonsfield in good order and condition and an iron fence around the same in good repair and painted.

Here is provision for a perpetuity. The amount devised is to be held forever in trust for certain purposes. Whether the amount thus to be held be great or small is immaterial. The true question is whether this is a gift for a charitable use.

A charity is a gift to any general public use, extending to all rich or poor. "Indeed, it is said that vagueness is in some respects essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recipient begins. So, if a gift for a private purpose tends to create a perpetuity, it will be void; but a gift for a public charity is not void, although in some forms it creates a perpetuity." 2 Perry on Trusts, § 687. "Charity is defined to be a general public use." 1 Jarman on Wills, 192. Courts have been exceedingly liberal in not restricting the objects to be regarded as charitable. "But," observes GRAY, C. J. in *Drury* v. *Natick*, 10 Allen, 169, "the gift must be expressly or by necessary implication for the public

benefit. Therefore a private museum or a library established by private subscription for the use of subscribers, has been held not to be a charity." In *Carne* v. *Long*, 2 De Gex, Fisher & Jones, 75, the devise was to the trustees of the Penzance public library, an institution established and kept on foot by the subscription of certain inhabitants of Penzance for purchasing books for the use of the subscribers; the books to be vested in trustees for the use of the institution, to continue as long as there were ten subscribers. It was held that this was not a charity. "The devise," says Lord CAMPBELL, "is for the benefit of a subsisting society, and one which is intended to subsist so long as ten members remain, and the property is to be taken out of commerce and to become inalienable, not for a life or lives in being, and twenty-one years afterwards, but for so long as ten members of the society shall remain. This seems to be a purpose which the law will not sanction as tending to a perpetuity." The chancellor held this to be no charity, but a devise for the benefit of a society of certain individuals.

The bequest of one hundred dollars to keep the testator's lot in the Piper burying ground forever in repair, was not for any public purpose, beneficial to all, rich or poor. It was not a charitable use, for which a perpetuity might be created. "A condition for keeping a tomb in repair," observes KINDERSLEY, V. C. in *Lloyd* v. *Lloyd*, 10 E. L. & Eq. 139, "is not a charitable use, and is not illegal. It may be illegal to vest property in trust for that purpose, so as to create a perpetuity; but a direction that the wife and Mary A. Lockley, are, during their lives, to enjoy the annuity and are to keep the tomb in repair, is quite lawful." The tomb was to be kept in repair during their lives. There was no perpetuity. In *Richards* v. *Robson*, 31 Beavan, 244, the bequest was to keep up the graves and gravestones of certain persons in good repair. The bequests were to the church wardens in perpetuity. The court say the keeping up the tomb or building, which is of no public benefit, is not a charitable use and the bequests were declared void. In *Hoare* v. *Osborn*, 1 L. R. Eq. 583, a gift to keep in repair forever the vault, in which the testator's mother was interred, was held void, as not

being a charity. To the same effect is the case of *Fisk* v. *Attorney General*, 4 L. R. Eq. 521 and *In re Williams*, 5 L. R. Ch. Div. 735. *In re Burkitt*, 9 L. R. Ch. Div. 576, a certain sum was bequeathed, "the income to be applied when necessary, in keeping in good repair the grave, the railing and tombstones of my late father;" the residue over and the portion of the gift for keeping the grave in repair was held void.

In *Dexter* v. *Gardner*, 7 Allen, 243, a bequest in trust forever, the income of which was to be appropriated for the benefit of the Friends meeting," in a particular place, is a charity, and not void as a perpetuity, it appearing that the Friends under their usages and discipline apply the funds to the maintenance of religious worship, &c. and for the purchase and repair of burying grounds, the latter being regarded as a religious duty. It was contended that the latter purpose was not a charity; but the court held the providing and oversight of a burying ground for this sect of christians, as a religious duty could not be distinguished from that of repairing and maintaining meeting houses for religious worship, and sustained the trust. In *Swasey* v. *American Bible Society*, 57 Maine, 527, it was held that a legacy to keep in repair a family burying ground, might be sustained.

But this is not even to keep in repair the family burying grounds. It is simply to keep in repair his (my) lot, not the Piper buryground. It is not for any charitable purpose. It is for a merely secular object. It is not even for all of his family or name, rich or poor. It is not for any general purpose of public interest. 1 Tudor's Law of Charitable Trusts, c. 1, § 14. "The erection of a monument to perpetuate the memory of the donor, is not a charitable purpose; nor is the repairing a vault or tomb containing his remains; *contra*, it seems, if the vault be used for the interment of the donor's family." 1 Jarman on Wills, 238, 4 Am. ed.

Assuming the bequest in perpetuity to keep in repair the testator's lot in the Piper burying ground to be void, the counsel for the complainants in his able argument relies upon the case of *Fowler* v. *Fowler*, 10 Jur. N. S. 648, as showing that the gift, the income of which was to be applied to keeping the tombs of

the testator and family in repair is void as tending to a perpetuity, and if so connected with a gift over as to be inseparable, both will be held void.    It appeared in that case that Rev. W. Fowler, by his will directed his executors and executrix to invest and set apart £500 in government securities.   .   .   upon the permanent trust of appropriating the income in and toward the maintenance in good order of the graves and gravestones, with the railing now inclosing the graves in Baldock church yard of my late wife and others, the surplus of such year's income to the rector of Baldock for the time being for his own use.

Both counsel admitted the gift of income for the maintenance of the graves was void.    The question was whether this fact invalidated the subsequent bequest to the rector of Baldock, as the sum necessary for carrying into effect the first, was not capable of being ascertained.    Sir JOHN ROMILLY, M. R. in his opinion says, " the difficulty is that it is contended the gift is altogether void, and cases cited establish that position ; that if a sum of money be given, part of which is to be applied to purposes which cannot be ascertained or which fail, and the remainder is given to other purposes, the whole gift fails, because of the invalidity of the first portion of the gift.   .   . although I cannot understand the principle in these cases, it is so well established by authority, I must hold the gift of the overplus void.   I think I am bound by the cases *Chapman* v. *Brown,* 6 Ves. 404, and the *Attorney General* v. *Hinxman,* 2 J. & W. 270, and as I cannot determine in what way the amount necessary to keep the tombs in repair is to be ascertained, I cannot determine the amount given to the rector of Baldock for the time being, I am of opinion that the whole gift fails."    The uncertainty of the amount necessary for repairs is the basis of the decision, but in the case at bar the uncertainty relates only to the fraction of the hundred dollars given for the purpose of repairs, and to nothing else.

But if possible the will of the testator should be sustained. His primary object, "his well considered and settled purpose" was to dispose of his property "to do the most good and be of the greatest benefit in promoting popular education" in the town of Parsonsfield.    Is that purpose to be defeated by reason of a

gift, which cannot be sustained? The Piper high school was the paramount purpose, regardless of any claims of his relatives, which he entirely negatived.

In *Hoare* v. *Osborn*, 1 L. R. Eq. Cases, 587, KINDERSLEY, V. C. says: "The one third of the fund attributable to the gift for the repair of the vault, which is void, falls into the residue." In *Fisk* v. *Attorney General*, 4 L. R. Eq. Cases, 521, the bequest was of 10,001 consols to the rector and church-wardens of a parish, and their successors upon trust to apply such of the dividends as should be necessary or required in keeping her family grave in repair, and to pay and divide the residue every year forever amongst the aged poor of the parish. Sir W. PAGE WOOD, V. C. after examining the authorities, concludes thus: "There will be a declaration that the legacy of 10,001 given to the rectors and church-wardens of St. James, Liverpool, is a good gift, and that they take the same discharged from the obligation of keeping in repair the family grave of the testatrix."

The decision, *Fowler* v. *Fowler*, relied upon by the counsel for the complainants, is made by ROMILLY, V. C. to rest upon the cases of *Chapman* v. *Brown*, and the *Attorney General* v. *Hinxman*, though in his opinion he states he could not understand the principle upon which they were determined. In *Mitford* v. *Reynolds*, 1 Phillips Ch. 189, (19 Con. Ch.) those cases were considered and the amount necessary to comply with that portion of the will providing for a monument was referred to a master to ascertain the sum needed for that purpose. *In re Williams*, 5 L. R. Ch. Div. 735, the case of *Chapman* v. *Brown*, was considered as overruled. In that case there was an invalid trust for the repair of tombs, and a disposition of the remainder. "In this case," remarks MALINS, V. C. "if the first gift cannot take effect, there is no reason whatever why the whole fund should not be applied to the second object. If the first gift had taken effect, only a small part of the fund would have been absorbed. It is, therefore, only so much as is required for the illegal purpose which is abstracted. The gift being void, none is required, and consequently the entire fund remains applicable to the valid purpose." *In re Burkett*, 9 L. R. Ch. Div. 576, a bequest was

made to keep in repair the grave, railing and tombstone of A, the residue to the poor of U, it was held that the first purpose of the gift being invalid, the whole was applicable to the charity. "If," says JESSELL, M. R. "a man were to give an income of £10,000 a year, on trust, in the first place to keep his father's tombstone in repair, which under no conceivable estimate could exceed £20 a year, and directed the residue of the £10,000 a year, to go to charity, I should assume that good law, which always means common sense, and common sense would concur in holding that the £20 gift was void, and that £9980 was given in charity. I should have no difficulty whatever in saying that was the law."

"It may well be doubted," observes GRAY, J. in *Giles* v. *Boston, W. & F. Society*, 10 Allen, 355, "whether this condition to maintain a private tomb or burial place, was not void as tending to create a perpetuity." In *Dawson* v. *Small*, L. R. 18 Eq. 114, the testator bequeathed to his executors £600, out of his personal estate upon trust, to invest and apply the income, in keeping in good repair all the tombstones and head stones of his relatives and himself in G churchyard, and directed that any surplus that might remain after defraying yearly the expenses before stated, should be given by his executors every year to poor pious members of the Methodist society above fifty years old. *Held*, that the trust to keep the tombstones in repair being honorary only, the whole £600 was well given for the benefit of the Methodist poor, *discharged from the obligation of keeping the tombstones in repair*. "The obligation to keep up the tombstones," observes Sir JAMES BACON, V. C. "is merely honorary, but the obligation to give all that is not applied for the purposes first mentioned, is by no means honorary; it is a trust that must be executed." So, in the case at bar. In *Hornberger* v. *Hornberger*, 12 Heisk, (Tenn.) 635, the court held a trust for the support and maintenance of the testator's graveyard, was void.

If the bequest for the keeping of testator's grave, railing and tombstone was a valid one, "the average amount for repair," says JESSELL, M. R. *In re Burkett*, his lot and the iron fence "might be ascertained by any competent person." The amount for that purpose being ascertained, the rest must be devoted to

the charitable purposes indicated by the testator. If the bequest was invalid, then it falls into the residue.

In *Nourse* v. *Merriam*, 8 Cush. 11, there was a bequest to the town of Bolton subject to a condition held by the court to be contrary to law and public policy. The question was, whether the void condition could defeat the will otherwise valid or not, and the court held the bequest valid, as if no such illegal condition had been inserted. The same principle is affirmed in *Drury* v. *Natick*, 10 Allen, 183, where the court say that a condition, so far as it undertakes to impose obligation upon a town for the future, which it could not legally assume, would be repugnant to the grant and void. In *Wilkinson* v. *Wilkinson*, 12 L. R. Eq. & Bank. cases, 604, it was held that a condition to do what the law forbids, is invalid, the court holding that a condition, which required the omission of a duty, was void. To the same effect is the case of *Attorney General* v. *Greenhill*, 31 Beavan, 193. When a deed of land is on condition subsequent, the fee is conveyed with all its qualities of transmission. The condition has not the effect to limit the title, until it becomes operative to defeat it. *Shattuck* v. *Hastings*, 99 Mass. 23. Conditions requiring an illegal act are void. In case of conditions subsequent, when the estate or bequest is made dependent upon their full or continued performance, "if such conditions are illegal or void for any cause, or are, or become impossible of performance, the effect is not to defeat the estate dependent upon them, but that continues, having once vested, the same as if no condition had been attached." 2 Redf. on Wills, 2d ed. 285. It must be remarked that here there is no express provision that the estate shall go over on the failure of the condition, in which case regard must be had to the express words of the will.

The condition to take care of the testator's lot in the Piper burying ground, is manifestly a condition subsequent. The estate then vests in the town. It must remain there if the condition be one which is against the rules of law.

It is provided in the will, that the school house for the Piper free high school shall be built and maintained by the inhabitants of Parsonsfield. It is objected that they cannot legally raise

money for the purpose of erecting such school house, or to pay the town treasurer and committee for their care of the bequest made to the town.

By R. S., c. 11, § 5, as amended by stat. 1878, c. 20, "every city, town and plantation shall raise and expend annually, for the support of schools therein, a sum of money, exclusive of the income of any corporate school fund, or of any grant, or from the revenue or funds from the state, or of any voluntary donation, *devise* or *bequest*, or of any forfeiture accruing to the use of the schools, not less than eighty cents for each inhabitant, according to the census of the state, by which, representatives to the legislature were last apportioned," &c. under certain penalties in case of neglect.

The minimum tax only is established. It may be increased for educational purposes to any extent that may be deemed advisable. No limitation is placed upon the sum to be raised but the good judgment of the inhabitants raising it.

That a city or town may receive money by devise or bequest, is fully recognized by this section. The gift becomes the property of the town, to be used for the purposes for which it was given.

By § 30, provision is made for a union school for more advanced scholars. By § 31, "two or more school districts may unite for the purpose of establishing and maintaining a system of graded free schools." But graded free schools are high schools.

The design of the testator was to aid the town in establishing a free high school for teaching higher branches of knowledge than are taught in the common grammar schools of the town. It is the giving the supplementary aid recognized by the statute. The fund is under the control of the superintending school committee of the town. The town itself might have raised the money to build the school-house needed for a school for more advanced scholars, and provided for an instructor. Much more, then, can the town raise the means for erecting and maintaining the school-house in which the munificent bounty of Mr. Piper has furnished the means for providing for instruction. *Nourse* v. *Merriam*, 8 Cush. 12 ; *Cushing* v. *Newburyport*, 10 Met. 508.

The town have accepted the gift. It is bound to furnish the requisite buildings. It must have a reasonable time for that pur-

pose. When executors or trustees are to pay a legacy to a corporation on conditions precedent, and no time is stated in the will, five years from its probate is allowed for their performance. R. S., c. 74, § 17. If the building of the schoolhouse were to be deemed a condition precedent, there is ample time for its erection.

*Bill dismissed.*

WALTON, BARROWS, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.