ROBERT C. WINTHROP & others, trustees, *vs.* ATTORNEY
GENERAL & another.

Suffolk.   Nov. 21, 1879.— Jan. 24, 1880.   ENDICOTT, J., did not sit.
SOULE, J., absent.

By a deed of trust, the donor gave to trustees a large sum of money, to be by them
and their successors held in trust to found and maintain a museum of archæ-
ology and ethnology in connection with Harvard College. A portion of the
sum was to be invested by the trustees, and the income applied to forming and
preserving a collection of antiquities; the income of another portion was to be
applied to the establishment and maintenance of a professorship of archæology
and ethnology in the college; and the remaining portion was to be invested and
accumulated until it reached a certain sum, when it might be employed in the
erection, upon land of the college, of a museum building, which when completed
should become the property of the college, for the uses of the trust. The trus-
tees were directed to keep a record of their doings, and to annually make a
report to the president and fellows of the college, setting forth the conditions of
the trust, and the amount of income received and paid out. Provision was
made for filling vacancies in the board of trustees, and permission was given to
obtain an act of incorporation. The trustees were also authorized to appoint a
treasurer, and to enter into any arrangements and agreements with the college,
not inconsistent with the terms of the trust, which might in their opinion be
expedient. An agreement was subsequently proposed to be made between the
trustees and the college, by which the trust funds were to be invested and man-
aged by the college as a part of its general fund, and a proportionate part of
the entire income be annually credited to the two funds first mentioned and be
paid to the trustees or their treasurer, and the proportionate income of the third
fund annually added by the college to the third fund until such time as the
trustees should demand payment of the whole or any part of the principal or
income, upon giving six months' notice; the management of the trust funds to
be held by the college in perpetuity, subject only to the right of the trustees to
demand and receive the income of the two funds first mentioned, and the whole
of the third fund; and the college to invest the funds as it should see fit, and
not to be responsible for any loss. *Held*, on a bill in equity by the trustees for
instructions, that the proposed agreement as to the two funds first mentioned
was inconsistent with the terms of the trust; and that the facts that the treas-
urer of the trustees, who had served without compensation, was about to resign,
that by the plan proposed the funds would be managed without expense, and
that another treasurer could not otherwise be secured without great expense,
did not present a case of such exigency as to warrant the sanction of the court
to the agreement.

MORTON, J.   By this bill in equity, brought against the At-
torney General and the President and Fellows of Harvard Col-
lege, the plaintiffs, as trustees under a deed of trust executed by
the late George Peabody, seek the instructions of the court as to

their right to carry into effect an agreement which they desire to make with the last-named defendant.

By the deed of trust the donor gives to the trustees " the sum of one hundred and fifty thousand dollars, to be by them and their successors held in trust, to found and maintain a Museum of American Archæology and Ethnology in connection with Harvard University." He directs, that of this sum the trustees shall invest forty-five thousand dollars as a fund, the income of which shall be applied to forming and preserving collections of antiquities and objects relating to the earlier races of the American continent ; that the income of a further sum of forty-five thousand dollars shall be applied by the trustees to the establishment and maintenance of a professorship of American Archæology and Ethnology in Harvard University, the professor to be appointed by the authorities of the University upon the nomination of the said trustees ; and that the remaining sum of sixty thousand dollars be invested and accumulated as a building fund until it shall amount to at least one hundred thousand dollars, when it may be employed in the erection of a suitable fire-proof museum building upon land of the college, which building when completed is to become the property of the college for the uses of this trust and none other. He further directs that the trustees shall keep a record of their doings, and shall annually prepare a report setting forth the condition of the trust and funds and the amount of the income received and paid out, to be presented to the president and fellows of the college. After making provisions for filling vacancies occurring in the board of trustees by death, resignation or otherwise, the donor further directs that the trustees shall have " the liberty to obtain from the Legislature an act of incorporation if they deem it desirable ; to make all necessary by-laws, to appoint a treasurer, and to enter into any arrangements and agreements with the government of Harvard College, not inconsistent with the terms of this trust, which may in their opinion be expedient."

By the proposed agreement, a copy of which is set out in the bill, the three trust funds are to " be invested and managed by the President and Fellows of Harvard College, through their treasurers and other financial officers and agents, as a part of

the general fund of Harvard College, in such manner that there may be credited in each year to each of said three trust funds, by said corporation, such proportion of the income divided by said corporation among all the funds forming said general fund, as shall be proportionate to the ratio which the capital of each of said three trust funds in such year bears to the whole amount of all the funds forming said general fund ; and that the income annually credited to the two funds first above mentioned may be annually paid to said trustees or their treasurer; and that the annual income of the third of said trust funds may be annually added by said corporation to the principal of said third trust fund, in order that the same may accumulate until such time as said trustees may demand payment of the whole or any part of the principal or income of said third trust fund, upon giving six months' notice to said corporation ;" the trustees stipulate that " the management of said trust funds may be held by the said corporation in perpetuity, subject only to the right of the trustees to demand and receive the annual income of the two trust funds first herein mentioned, and to demand and receive the whole or any part of the principal or the income of said third trust fund, upon giving six months' notice in writing as aforesaid; that said corporation shall have the right to vary the investments through its treasurers, officers and financial agents whenever it shall see fit; and that said corporation shall not be responsible for any loss, wasting or diminution of either of the trust funds in its charge, nor of the income of either of them, and that neither the trustees nor their successors shall interfere with the management or the custody of said trust funds by said corporation through its treasurers, officers or other agents, so long as the said corporation shall fulfil its covenants contained in this agreement."

It seems to us clear that this agreement is inconsistent with the terms of the trust. It was plainly the intention of the donor to entrust the large sum given by him to the care and management of the trustees chosen by him, and their successors. He selected as trustees men of ability and eminence, and carefully provided that they should be succeeded by men of like character. An important part of their duties is to take care of the trust fund. It is " to be by them and their successors held in trust."

They are to invest it and to report to the president and fellows of the college, from year to year, the condition of the trust and funds and of the income. These provisions and the general scope of the deed show that it was the intention of the donor that the care and management of the principal of the fund, as well as of the income, should be permanently in the trustees.

But, by the proposed agreement, the trustees are entirely divested of any control over the principal of the two trust funds first named in the deed. They are placed under the control and management of the President and Fellows of Harvard College to be held in perpetuity, as a part of their general funds, provided that the corporation shall pay to the trustees, as income, a part of the income of the general funds, to be determined by the proportion which the said trust funds bear to the whole of the said general fund. This arrangement, in effect, divides the duties of the trustees, and, as to the control and management of the funds, substitutes for the trustees selected by the donor, new trustees who are to manage the funds in a manner not intended or contemplated by him. It is a departure from the directions of the donor, which could be justified, if at all, only upon proof of the most pressing exigency. But the only reasons assigned by the plaintiffs are that their treasurer, who has acted without compensation, is about to resign, and that the agreement, if made, would be beneficial to the trusts, as it secures the services of efficient treasurers and custodians of the funds without charge, whose services they could not otherwise secure without great expense. This does not show an exigency which would justify the court in altering the scheme of the donor. The court cannot do this, either as to the objects of the charity or the agents by whom it is to be administered, unless it appears to be impossible to carry out the scheme according to its terms. *Fellows* v. *Miner*, 119 Mass. 541. *Harvard College* v. *Society for Theological Education*, 3 Gray, 280. In this case there is no failure of the objects and purposes of the trust, calling for the application of the rules as to the *cy pres* appropriation of the funds; there is no failure of trustees, but the present trustees and their successors can without difficulty execute the trust according to its terms, and we are of opinion that it is their duty to do so, as

well in regard to the investment, care and management of the principal of the trust funds, as in regard to the other duties created by the trust deed.

The learned counsel for the plaintiffs argues that the trustees are justified in making this agreement under the last clause of the trust deed. But as the agreement contains elements which are "inconsistent with the terms of the trust" and the scheme of the donor, it is not covered by this clause. He also argues that the question in the case is merely whether the arrangement proposed is a safe and prudent investment of the trust funds. We cannot so regard it. As we have before said, the agreement involves as one of its elements the absolute and irrevocable surrender by the trustees of the control and custody of the principal of the first two funds and the substitution of other custodians, and thus violates the letter and spirit of the deed of trust. Even if the arrangement is one which is safe and prudent to be made by one having the absolute control of property, it is a disposition which the trustees are not at liberty to make.

It is unnecessary to discuss the question how far these considerations would apply to the third trust fund, if it was the subject of an independent agreement, because the objections to the provisions of the agreement as to the first two funds are sufficient to show that the bill cannot be maintained.

*Bill dismissed.*

*E. R. Hoar,* (*C. A. Williams* with him,) for the plaintiffs.
No counsel appeared for the defendants.