CHARLES W. ELIOT & others *vs.* TRINITY CHURCH & others.

Suffolk. January 21, 1919. — April 1, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, & CARROLL, JJ.

*Trust,* Charitable, *Cy pres. Equity Jurisdiction,* Charitable trust, *Cy pres.*

The erection and gift of a suitable work of art as a monument to or memorial of a great spiritual leader create a public charity.

When a charitable gift can be administered according to the directions of the donors a court of equity is not at liberty to modify the terms of the gift upon considerations of policy or convenience.

The doctrine of *cy pres* can be invoked only in cases of exigency when it has become impracticable to execute reasonably the terms of the trust; and, where there has been no failure in the object of the trust, no uncertainty as to the mode of its administration and no occasion to resort to the aid of a court for the removal of defects or impediments lying in the way of the execution of the trust, the doctrine has no application.

A committee, representing the donors of a fund contributed to procure and erect a monument to a great former rector of an incorporated church afterwards bishop of the diocese, having procured such a monument containing a statue of the late bishop, made an indenture in writing with the church, whereby the committee agreed to erect the monument on land belonging to the church and to convey it to the church in trust, and also to transfer to the church the balance of the money contributed as a trust fund for the maintenance, repair and restoration of the monument, with power to expend the portion of the income not needed for such purposes for charitable objects not ecclesiastical as to the rector, wardens and vestry of the church should seem meet, and whereby the church agreed to accept and perform these trusts. On application by the committee to the Supreme Judicial Court, that court made a decree authorizing the committee to dispose of the funds in their hands in accordance with the terms of the indenture between them and the church. Thereupon the terms of the indenture were performed, the monument was erected on land of the church upon the site selected and the remaining trust fund was transferred to the church. About six years later the committee obtained a decree from the Supreme Judicial Court authorizing the church to expend from the trust fund then in its hands an amount not exceeding a sum named for casting in bronze and erecting on some site in the city of Boston approved by

the church a statue of the late bishop which had been created in clay by another sculptor, and under authority of this decree a statue and its pedestal were completed. The wardens and vestry of the church declined to approve a proposed site for this new statue directly in front of the church building, so long as the first monument 'to the bishop containing the statue of him remained upon the land of the church. Thereupon the surviving members of the original committee of the contributors filed a bill in equity, praying that the terms of the trust indenture between the committee and the church should be modified so that the church should not be required to maintain the first statue upon its grounds but might be directed or permitted to return that statue to the committee or to place it upon such other site or sites as might be selected and approved by the wardens and vestry of the church, and to use the trust fund in the hands of the church for the moving, maintenance, repair and restoration of the monuments. *Held,* that the court had no power to change the express and unequivocal terms of the charitable trust, which had been administered fully by the erection of a statue upon the designated site.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 6, 1919, as described in the opinion, against Trinity Church in Boston, a corporation, and the Attorney General and one of the contributors hereinafter referred to as representing all of such contributors, praying that the terms of a trust agreement between a committee, of whom the plaintiffs were the survivors, of the contributors for a monument to Phillips Brooks, and Trinity Church, dated January 9, 1909, as approved by a decree of the Supreme Judicial Court entered on February 5, 1909, might be so far modified that Trinity Church should not be required to maintain the St. Gaudens statue of Phillips Brooks upon its own grounds, but might be directed or permitted to return that statue to the committee, represented by the plaintiffs, to be placed by them in some other location, or to place it upon such other site or sites as might be selected and approved by the wardens and vestry of Trinity Church with full power to change such location from time to time, if they should deem it advisable, and to use the trust fund in the hands of Trinity Church so far as might be necessary for the moving, maintenance, repair and restoration of the monuments, including the pedestals and other accessories.

The case came on to be heard before *De Courcy,* J., who with the consent of the parties reserved it upon the bill and answers for determination by the full court.

*E. A. Whitman,* for the plaintiffs.

*R. G. Dodge,* for the defendant Trinity Church.

There was no appearance for the Attorney General.

Rugg, C. J.  This is a suit in equity brought by surviving members of a citizens' committee of thirty-one appointed by the vestry of Trinity Church in 1893 to receive contributions of money and therewith to procure and erect a monument, to be placed in or near Copley Square in Boston, to the memory of Phillips Brooks, one-time rector of said church and later bishop of the Protestant Episcopal Church in the diocese of Massachusetts. Generous contributions were received from a large number of people, collections and organizations.  The committee then employed the late Augustus St. Gaudens to construct such a monument, who died before finishing the work, but by an arrangement with his widow it was completed about 1909.  In that year the committee presented a petition in equity to the Supreme Judicial Court setting forth these facts and further alleging that it had in its hands a considerable sum of money in excess of the amount required for the completion and erection of the monument, that it proposed to erect the monument on land belonging to Trinity Church and to convey the monument to said church in trust and to transfer to said church the balance of the money contributed after paying the expenses of completing and erecting the monument, to be held as a permanent trust fund for the purpose of providing for the maintenance, repair and restoration of the monument, with power to expend such portion of the income as was not needed for such purposes for such charitable objects not connected with an ecclesiastical body or corporation as to the rector, wardens and vestry of the church should seem meet.  To that petition in equity was annexed a copy of the indenture between a committee, acting for the contributors, and Trinity Church, setting forth in detail the arrangements proposed to be entered into, its obligations being conditioned upon its approval by the Supreme Judicial Court.  Upon that petition a decree was entered to the effect that "the plaintiffs dispose of the funds in their hands in accordance with the provisions of the indenture between themselves and Trinity Church, dated January 9, 1909, a copy of which is set out in Exhibit B of the bill and which is approved by this Court."  The terms of the indenture thereupon were performed.  The monument was erected and is still standing upon the site selected, which is near Copley Square, and the trust fund was transferred to Trinity Church, which now holds

it and has continued to execute the trusts thereby required of it.

Further allegations of the petition are that "In the year 1915 there had been prepared by Bela Pratt, a Boston sculptor of distinction, a model in clay of heroic size of the statue of Phillips Brooks. This model having been brought to the attention of many of the original contributors and being regarded by them as one of remarkable dignity and as being strikingly characteristic of the man, they were of the opinion and desirous that such memorial to him should be erected in the city of Boston, and a large number of said contributors united in a request to your petitioners to present a petition to this honorable court asking that the respondent Trinity Church be authorized and empowered to expend from such trust fund now in its hands a sum not to exceed thirty-five thousand dollars ($35,000) to procure the reproduction of said model in bronze and a suitable erection thereof on some site in the city of Boston which may be approved by said Trinity Church." Petition to that end was brought and a decree was entered in accordance with its prayers. The petition further alleges: "Thereupon and under said decree your petitioners, with others selected by them and approved by the wardens and vestry of Trinity Church, proceeded to procure the completion of said statue in bronze, and it and its pedestal are now completed and are ready for erection in the city of Boston. Your petitioners believe that the most appropriate site for said statue, which represents Phillips Brooks in a characteristic attitude as a preacher, is the triangle of land belonging to the city of Boston in Copley Square directly in front of said Trinity Church, and the art commission of the city of Boston has informally expressed its willingness that the statue should be there placed if such site should be approved, under said decree of the court, by said Trinity Church acting through its wardens and vestry. Your committee has applied to said wardens and vestry for an approval of said site, but said wardens and vestry have been unwilling to take action thereon so long as the said monument of Phillips Brooks made by St. Gaudens shall remain upon the land of the church, and they feel, and have so expressed their opinion, that Trinity Church is so far bound by the terms of said trust that it is unable to remove said St. Gaudens monument to any other

location, and that there is even grave doubt whether the terms of said trust can be legally modified so as to permit such removal." The prayer is that the terms of the trust indenture between the committee of the contributors and Trinity Church, which was referred to and approved by the decree of 1909, be so modified that Trinity Church "shall not be required to maintain said St. Gaudens statue upon its own grounds, but may be directed or permitted to return said statue to this committee to be placed by it in some other location or to place it upon such other site or sites as may be selected and approved by the wardens and vestry of said Trinity Church, with full power to change such location from time to time if they deem it advisable, and to use the trust fund in the hands of said Trinity Church so far as may be necessary for the moving, maintenance, repair, and restoration of said monuments, including the pedestal and other accessories, whenever the same may be at any time necessary."

The facts alleged in the petition are admitted by the answers. Trinity Church raises the question of law whether the removal of the St. Gaudens monument can be authorized by the court. That is the issue to be decided.

The erection of a noble work of art as a monument or memorial to a great spiritual leader is a public charity. It is a means of education and a source of inspiration. The citizens' committee of thirty-one in receiving contributions for the procurement of a suitable monument to the memory of Phillips Brooks were trustees of a valid charitable trust. The terms of that trust, as disclosed and manifested by the words of the circular inviting contributions and by the subscriptions themselves, were explicit both as to the object and place of location. Those terms were, "to erect a statue of Phillips Brooks, to be placed in or near Copley Square." There was no doubt or uncertainty about their meaning. There was no impediment about the complete execution of those terms. There was no room for the application of the doctrine of *cy pres* in these particulars. Whether the committee of thirty-one as trustees would have had authority to erect the St. Gaudens statue on the grounds of Trinity Church need not be inquired, because one effect of the suit in equity of 1909 was to substitute Trinity Church as trustee in place of that committee for the execution of so much of the original trusts as remained unper-

formed, and Trinity Church was the owner of the site near Copley Square where the statue was] erected. The express and unequivocal terms of the trust thus were fully administered by the procurement and erection of a statue upon the designated site. The St. Gaudens monument as erected is a complete compliance with that trust. The decree of 1909, so far as concerns the statue itself and its location, does not depend in any degree upon the *cy pres* doctrine. So much of that decree as relates to the disposition of the surplus of moneys contributed more than needed for the procurement and erection of the St. Gaudens statue, rests upon the doctrine of *cy pres*. The decree authorizing the Bela Pratt statue of Phillips Brooks rests also upon the doctrine of *cy pres*. But neither of these decrees purported to modify in any particular the unmistakable terms of the main original trust. Those terms were plain at the outset, they have remained unobscured by any subsequent decree of court, and they have not been qualified in any respect by any intervening event and they have been fully executed according to their accurate meaning.

Under these circumstances and upon all the allegations of the bill, there is no authority to warrant the removal of the St. Gaudens statue in order to render feasible the erection of the Bela Pratt statue upon a site nearby. The donors of the contributions were founders of the charity. They manifested their charitable scheme in unambiguous phrase. They selected their trustees, by whom that scheme has been given effect. The court is not at liberty to alter that scheme thus consummated. When charitable gifts can be administered according to the directions of the donors, the court "is not at liberty to modify it upon considerations of policy or convenience." *Jackson* v. *Phillips*, 14 Allen, 539, 591, 592. *American Academy of Arts & Sciences* v. *Harvard College*, 12 Gray, 582, 595. *Fellows* v. *Miner*, 119 Mass. 541. *Winthrop* v. *Attorney General*, 128 Mass. 258, 261. *Harvard College* v. *Attorney General*, 228 Mass. 396, 410.

It follows that the doctrine of *cy pres* has no application to the facts revealed on this record. That doctrine can be invoked only in cases of exigency when it has become impracticable reasonably to execute the terms of the trust. There has been no failure of the object of this trust, no uncertainty as to the mode of its application, and no occasion to resort to the aid of a court for the removal

of defects or impediments lying in the way of the execution of the trust.  *Smith Charities* v. *Northampton,* 10 Allen, 498.  *Baker* v. *Smith,* 13 Met. 34, 41.  *Crawford* v. *Nies,* 224 Mass. 474, 490.

*Bill dismissed.*