TRUSTEES OF THE WATKINSON LIBRARY ET AL. v.
ATTORNEY GENERAL OF THE STATE OF CONNECTICUT ET AL.

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 85372

Memorandum filed April 17, 1950.

*Day, Berry & Howard,* of Hartford, for the Plaintiffs.

*William L. Hadden,* Attorney General, and *Thomas J. Conroy,* Assistant Attorney General, both of Hartford, for the Defendants.

ALCORN, J. The Trustees of the Watkinson Library, a specially chartered Connecticut corporation, and the trustees of Trinity College in Hartford, join as plaintiffs seeking a construction of the eleventh codicil to the will of David Watkinson, deceased, a transfer of the corpus of the trust therein created to Trinity College, and such other relief as may be proper. The defendants are the attorney general of Connecticut and the representatives and creditors of the testator. The attorney general has appeared and admitted the allegations of the complaint, but the other defendants have not appeared. They, the representatives and creditors of the testator, are unknown but through publication they have received as full and adequate notice of the pendency of this action as could be given under the circumstances.

The case was presented for judgment upon the pleadings but the court requested, and the plaintiffs have offered, evidence in support of their complaint. It appears that David Watkinson died on December 13, 1857, leaving a will and several codicils which were duly admitted to probate. The material portions of codicil No. 11, dated October 10, 1855, gave the sum of $100,000 to certain designated persons in trust, "for the purpose of establishing in connection with the Connecticut Historical Society a Library of Reference, to be accessible at all reasonable hours and times to all citizens and other residents and visitors in the State of Connecticut, under such control, rules and regulations, as in the judgment of said Trustees, and of their successors, as will best secure the preservation of the books composing such Library, and comport with the general convenience."

Certain provisions of the codicil have lost their significance in view of the time which has elapsed and other elements disclosed. Relative to the immediate issue, the codicil provides further that

"Fourth. The residue of said sum of one hundred thousand dollars, ($100,000) or of any other portion of my estate which may become payable and to be paid to the Trustees named in

Article XII, of this Codicil, shall constitute a Library Fund, the income of which only shall always be applied to the following objects:

"1. A yearly sum not exceeding five hundred dollars, ($500) in any one year, may be appropriated and applied by said Trustees to the purchase of books for circulation, and be donated to the Library of the Hartford Young Men's Institute, or to some other Library of similar character in the City of Hartford, at the discretion of said Trustees, their successors etc., provided a sum equal to that appropriated by, and paid out of, this bequest, shall be applied during the same year by the Library receiving the same, to the purchase of other books, approved by the Trustees, or a committee by them appointed.

"2. A yearly sum, not exceeding five hundred dollars, ($500) in any one year, may be applied by said Trustees to or toward the purchase of some work or works of art for, and donated to, the Wadsworth Athenaeum, provided a further sum equal to that applied out of this bequest shall in the same year be appropriated by the Wadsworth Athenaeum for the same or similar purposes.

"3. The residue of the net annual income of the Library Fund shall be applied to the purchase of books for a Library of Reference, (and not of circulation,) to be kept in rooms of, or in convenient connection with, the Connecticut Historical Society, for consultation, but not to be removed therefrom except on the written permission of the Trustees, designated in Article XII, of this Codicil, or their successors.

"ARTICLE XIV. The following conditions are to be observed in relation to the investment, management and account of the Library Funds hereby instituted.

"1. All monies received as principal are to be invested as speedily as may be consistent with safety, in permanent securities.

"2. All permanent investments are to be made in bonds and mortgages, on unincumbered real estate, of twice the value of the amount loaned, or in stocks of the United States, or of the State of New York, or of Massachusetts, or Connecticut, or in the bonds or stocks of the City of Hartford, or of New Haven, or New York, or Boston, or in such other securities as shall be authorized by the Judge of Probate for the Probate District of Hartford.

"3. The securities which may be conveyed to the Trustees, and all investments and change of investments, all payments of principal and interest, and all expenditures on account of this trust, shall be entered in a book or books, in which shall also be entered a printed copy of this portion of my Will, together with a printed copy of any act of incorporation under which said Trustees shall become organized, and of the by-laws which may from time to time be adopted by the Trustees or their successors, for their government. An annual report of the condition of the Fund and Library shall be published for the information of the public. And a catalogue shall be prepared and published from time to time, to make the contents of the Library available to persons resorting thereto."

By an act approved June 8, 1858, the General Assembly chartered the trustees of the Watkinson Library, (5 Spec. Laws 197) and the corporation thus created received the bequest and has ever since administered the fund.

The library opened in 1866 in quarters adjacent to the Connecticut Historical Society in the Wadsworth Atheneum in Hartford with a collection of some 12,000 volumes. Thereafter, for a period of seventy years, the collection grew in numbers and importance under the supervision of James Hammond Trumbull and Frank B. Gay, scholars and bibliographers. The library as constituted today is a scholar's reference library containing approximately 130,000 catalogued volumes and an estimated 20,000 additional volumes which have not been catalogued. Included in its collection are some 190 incunabula, another 959 books printed in the sixteenth century, rare volumes in choice bindings, a large collection of bibliography, transactions of learned societies, and sets of early periodicals, theatre and concert programs, maps, correspondence, and early American sheet music. Many of the items are of world renown and because of their antiquity require special care. The fifteenth century bindings need frequent oiling or, preferably, air-conditioned surroundings. The value of the collection is not estimated beyond the fact that it could not be duplicated at any sum.

The trustees have followed the direction in the will by housing the collection "in connection with the Connecticut Historical Society" and have kept it "accessible at all reasonable hours and times to all citizens and other residents and visitors in the State of Connecticut." Since it is a research library for advanced scholars, however, it has in recent years been used by an average

of only about three persons per day. The library is, nevertheless, widely known and, consequently, it has been considerably used through correspondence concerning its subject matter.

The present quarters are not fireproof, are dirty, antiquated, and subject to excessive dryness in winter and humidity in summer. Shelf space is markedly inadequate, the rooms are poorly lighted, and it is impossible to arrange the collection in any systematic way. Many volumes deserving vault protection repose on open shelves, and others are stacked or crowded in multiple rows on the shelves. Under the existing conditions the leather bindings of many of the volumes have deteriorated beyond reclamation and much of the collection is sadly in need of restoration or repair if it is to be saved. It is estimated that the cost of a complete cataloguing would amount to between $50,000 and $75,000, but this necessary task is impossible in the present quarters because of lack of space, and because of lack of funds.

Assets in the hands of the trustees for the year ending November 25, 1949, consisting of bonds, stocks, mortgages and bank accounts total $85,849.97. The total annual income for the same period has amounted to $3381.28. A recent benefaction of $7000 has already been partly used in oiling some of the leather bindings to arrest deterioration, but the funds on hand are wholly inadequate to maintain the collection and do the necessary things required in order to preserve it. In fact, the income is almost totally absorbed in paying the salary of a librarian.

The trustees are alarmed at the danger to the collection both from fire and deterioration, and for a period of about four years they have been investigating possible avenues for saving it. They have attempted to obtain financial help from, or to amalgamate with, the Hartford Public Library or the Connecticut Historical Society, or both, but without success. They have secured from the General Assembly a charter amendment to permit the corporation "by vote of a majority of its trustees, to merge with any corporation maintaining a public library within the limits of the town of Hartford, or to transfer its books and other property to Trinity College, in order to permit its library to be used and conducted in conjunction with the library of Trinity College, provided such merger or transfer shall be in conformity with the provisions of the will of David Watkinson as it may be interpreted by a court of competent jurisdiction." 25 Spec. Laws 875, approved May 23, 1949. This amendment includes

a legislative finding that the continued maintenance of the library in rooms of or in convenient connection with the Historical Society is impracticable, which is to be accorded due weight upon the issue now presented. *Lyman* v. *Adorno,* 133 Conn. 511, 518. The trustees have duly accepted this amendment to the charter and filed a certificate to that effect with the secretary of state.

On February 1, 1949, the Connecticut Historical Society unanimously adopted a resolution reciting, in substance, that it has not contributed in any way to the operations of the library, the question of adjacent locations is no longer of importance to either organization, that the operation of the two organizations in common has long ago proved impracticable, and therefore

"That The Connecticut Historical Society relinquishes to the Trustees of the Watkinson Library any claims it may have that it be continued in the future 'in connection with The Connecticut Historical Society.' "

On June 9, 1949, the trustees of the Watkinson Library and the trustees of Trinity College unanimously approved an agreement which, after referring to the 1949 charter amendment and the resolution of the Historical Society, provided, in substance, that all books, papers and documents, endowment and other funds, cash on hand, and all other property of the Watkinson Library would be transferred to Trinity, which undertook to maintain the collection for use as a library of reference to be accessible at all reasonable hours and times to all citizens, other residents and visitors in the state of Connecticut, and to use the funds in connection with the library, the agreement being contingent upon a final judgment of a court of competent jurisdiction permitting such transfer.

Trinity College is an established and well-known educational institution in Hartford. The testator was one of its founders and, for many years, one of its trustees. Trinity now has a reference library of some 210,000 volumes, of which only about 15 per cent could be said to be a duplication of the Watkinson collection. Its library building is fireproof and is open eighty-two hours a week, or about twice as long as the Watkinson Library is open at present. The Trinity library is located only about ten minutes by bus from downtown Hartford where the Watkinson Library is now housed. Adequate parking facilities are available and, if placed in conjunction with the Trinity library, the Watkinson collection would be publicized by the

college in catalogues having countrywide circulation. The present facilities at Trinity are not adequate to house the Watkinson collection, but upon the eventuality that proper judicial authority might be given for its transfer to Trinity, the college has collected funds in the present aggregate of $670,000, exclusive of the funds now available in the hands of the Watkinson trustees. Of this amount approximately $300,000 would be used for the construction of a fireproof building to provide adequate accommodations for the Watkinson collection, and Trinity will utilize the remaining $370,000 for cataloguing, care and maintenance of the collection.

Finally, and during the pendency of this action, the Connecticut Historical Society has negotiated for and voted to purchase new quarters, subject only to the contingency of the necessary zoning approval. Upon completion of this sale, the Historical Society intends to move to its new location, which will have no space available for the Watkinson Library, thus leaving the latter in its existing hazardous quarters and totally disconnected from the Historical Society.

The bare recital of the factual situation confronting the trustees of the Watkinson Library furnishes cogent expression of the impracticability if not the impossibility of continuing the library "in connection with" the Connecticut Historical Society. No citation of authority is needed for the proposition that this is a charitable trust of a most worthy sort. The testator had the laudable general purpose to establish a "Library of Reference, to be accessible at all reasonable hours and times to all citizens and other residents and visitors in the State of Connecticut."

It was his wish that it be maintained "in connection with the Connecticut Historical Society," but at the same time it was to be "under such control, rules and regulations, as in the judgment of said Trustees, and of their successors, as will best secure the preservation of the books composing such Library, and comport with the general convenience." The trustees, after investigating various possibilities, are of the opinion that the proposed transfer to Trinity will "best secure the preservation of the books . . . and comport with the general convenience." In the near century which has intervened, circumstances have so altered that strict adherence to the maintenance of the library "in connection with" the Historical Society would defeat the testator's general purpose warranting intervention by the court. 3 Scott, Trusts, p. 2116.

This is not a situation in which it is merely undesirable but still practicable to carry out the testator's direction. *Seymour* v. *Attorney General,* 124 Conn. 490. It is not a case where no exigency is shown; *Winthrop* v. *Attorney General,* 128 Mass. 258; nor one in which the trust could be administered as directed; *President and Fellows of Harvard College* v. *Attorney General,* 228 Mass. 396; nor yet one in which modification is sought merely on considerations of policy or convenience; *Eliot* v. *Trinity Church,* 232 Mass. 517. In fact, the Historical Society has made apparent the fact that it no longer wants the Library "in connection with" it, quite aside from the daily hazard confronting this irreplaceable collection in its present surroundings.

The evidence emphasizes further that, in its present situation, the library is not "accessible" in any practical sense to those for whom the testator provided it, heaped, as it is, in unlisted disarray in surroundings discouraging to research and study.

A decision of the issue presented does not require any fine distinction to be drawn between the court's power under the doctrine of approximation and its general equitable power over the administration of trusts. *Shannon* v. *Eno,* 120 Conn. 77; *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677; *Bridgeport Public Library and Reading Room* v. *Burroughs Home,* 85 Conn. 309.

The proposal submitted calls for variations from the specific terms of the trust only in the situs of the library and in the personnel of the trustees. The fundamental general purpose will continue undisturbed. Undeniably the change of location is desirable under the facts disclosed.

The change proposed in the personnel of the trustees amounts in reality to a transfer of administration from one corporation to another. In such a situation "it should appear *inter alia* that the corporation" (to which transfer is made) "is properly equipped, or can and will so equip itself, to carry out the trust; that it has taken proper corporate action, expressing its consent to accept the trust, and that it has the requisite legal capacity and qualification." *Bible Readers' Aid Society* v. *Katzenbach,* 97 N. J. Eq. 416, 419. The trustees of Trinity College amply meet these requirements. Indeed, it seems a particularly fortuitous circumstance that the administration of this trust can come not only under the supervision of an institution of learning but more particularly one which the testator helped to found and direct.

Rarely is a situation presented in which a court could be more confident of the testator's own approval of its action were he here to express it.

Further that that, the proposal not only rescues the trust property from the almost certain disintegration and hazards now facing it but, by a very substantial financial injection, revitalizes it and seems to insure, as positively as may be, its perpetuation for the explicit general purpose which the testator sought to accomplish.

A decree may enter that when Trinity College shall have constructed a fireproof building in conjunction with its library and adequate to accommodate the items comprising the Watkinson Library in a manner to make them readily available and accessible for reference; then and on that condition the trustees of the Watkinson Library are authorized to take the necessary steps to transfer and convey its property and assets to Trinity College, pursuant to the agreement of June 9, 1949, to be thereafter administered by the trustees of Trinity College under the designation of the "Watkinson Library" without commingling with other property or funds of the college; the books, documents, manuscripts and other items of the library collection to be maintained as "a library of reference," "for consultation, but not to be removed therefrom except on the written permission of the trustees" and "to be accessible at all reasonable hours and times to all citizens and other residents and visitors in the State of Connecticut under such control, rules and regulations as in the judgment of said Trustees, and of their successors, as will best secure the preservation of the books composing such library, and comport with the general convenience"; and the investments and funds to be administered pursuant to paragraph fourth of Article XIII, and Article XIV of Codicil 11 of the testator's will.