MASSACHUSETTS CHARITABLE MECHANIC ASSOCIATION
*vs.* E. JEFTS BEEDE & others.

Suffolk.  October 11, 1946. — January 7, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Corporation*, By-laws, Charitable corporation. *Charity. Trust*, Charitable trust. *Massachusetts Charitable Mechanic Association.*

A vote of a charitable corporation amending its by-laws by abolishing the offices of trustees of its charitable fund, transferring custody of that fund under a new name to the corporation's treasurer, creating an investment committee and placing investments of the fund under its direction, as well as making other structural changes in the matter of its "charity fund," was invalid where it appeared that the by-laws provided that no change should be made therein unless it had been proposed at a previous meeting of the corporation and referred to a committee, and that the proposal at the "previous meeting" had been merely for "a change in the by-laws by which money may be transferred from the charity to the general fund."

Upon the record of a suit in equity reported to this court upon an agreed statement of facts, it appeared that dismissal of the bill was required; but, the case having previously been before this court in another aspect and the fundamental issues having been fully argued, this court announced as its opinion that so called trustees of the "charity fund" of the Massachusetts Charitable Mechanic Association were not set up as independent trustees in the legal sense but were mere officers and agents of the corporation, and that the corporation owned the fund on the same basis as it owned its other assets, subject to the provisions of its statutory charter.

BILL IN EQUITY, filed in the Superior Court on June 6, 1946.

The case was reserved and reported by *Williams*, J., upon the pleadings and an "agreement as to all material facts constituting a case stated."

*W. P. Lombard,* (*W. C. Lombard* with him,) for the plaintiff.

*E. F. McClennen,* for the defendants Soule and another.

WILKINS, J. This bill in equity by a charitable corporation chartered by special act describes the defendants as "members of the investment committee" of the plaintiff, and seeks to require them to turn over to the treasurer of the plaintiff (1) the sum of $106,073.98 "from the security fund" for the purpose of paying overdue taxes on Mechanics Building, Huntington Avenue, Boston, owned by the plaintiff, and (2) the entire "security fund [which] was formerly known as the charity fund." The defendants in their answer deny the plaintiff's right to the money, and allege in substance, among other things, that the fund is still the charity fund and not the security fund, and that they hold it in the capacity of trustees and not as members of the investment committee. The case was submitted on agreed facts, and the judge, without decision, reported the case to this court for determination. G. L. (Ter. Ed.) c. 214, § 31.

The plaintiff was incorporated by St. 1805, c. 75. The statute provides that the corporation "shall have power . . . to make bye-laws for the election of their members and officers; the collection of assessments; the regulation of their meetings, and the appropriation of their funds for charitable uses; but shall not have power to make bye-laws or regulations for any other purposes whatsoever" (§ 1). The corporation can hold "any personal or real estate, within this Commonwealth" (§ 2). The "annual income . . . shall only be employed for the purpose of relieving the distresses of unfortunate mechanics and their families, to promote inventions and improvements in the mechanic arts, by granting premiums for said inventions and improvements, and to assist young mechanics with loans of money" (§ 3). By St. 1825, c. 88, the Legislature authorized the corporation to "establish schools and libraries for the use of apprentices, and the improvement of the arts."[1]

---

[1] The statutory charter, at first temporary, was by St. 1825, c. 88, made to continue "during the pleasure of the Legislature." The amount of property which the corporation might hold was gradually increased, apparently to $4,600,000. St. 1805, c. 75, § 2. St. 1825, c. 88. St. 1848, c. 49. St. 1869, c. 270. St. 1880, c. 234. St. 1925, c. 28.

More than sixty years ago the corporation purchased land on Huntington Avenue, Boston, and on it erected Mechanics Building. This was a proper use of its funds. *Richardson* v. *Massachusetts Charitable Mechanic Association*, 131 Mass. 174. The building now represents an investment of about $700,000 and is the only real estate the corporation owns. Taxes of about $106,073.98 for the years 1943, 1944, and 1945, are unpaid, and the city of Boston holds a tax title. Notice of proceedings in the Land Court to foreclose the right of redemption has been given. The corporation also needs money for the maintenance of the building, which since November, 1945, has been operated at a profit, but which for the preceding fifteen years was operated at a loss except in 1933 and 1935. The corporation is without funds except those which it has placed in the charity fund, as hereinafter discussed.

In 1886 the corporation voted to establish the charity fund, the income of which was to be paid to the committee of relief set up from its membership in 1812. On April 18, 1889, the following by-law was passed, "There shall be established and maintained a charity fund, of which Levi L. Wilcutt, Charles Whittier, and Erastus B. Badger, or their successors, shall be trustees; and all donations to this association, not otherwise especially set apart for specific purposes by their donors, shall be paid into this fund; the income only of which shall be expended, and that only in maintaining the charitable work of the association as now or hereafter may be provided in the by-laws. The donations as received, if not already invested in the bonds of this association dated May 1, 1885, and secured by a mortgage made by the association of the same date to the Boston Safe Deposit and Trust Co., and also the proceeds of any such bonds belonging to this fund when paid, shall be invested in such securities as are prescribed for the savings banks of this Commonwealth." Seven persons have contributed a total of $25,000 which was put in the charity fund. The principal of the charity fund was $54,505.02 in 1910, is now $427,000, and was derived for the most part in the first instance from the operations and activities of the

corporation such as the rentals of Mechanics Building. From 1920 to 1930 "tremendous sums were realized" in this way, and in those years $172,929.35 was "transferred" from rentals to the fund, increasing it from $160,450 in 1920 to $333,379.35 in 1930. From time to time bank accounts and unexpended income from investments in securities have been transferred and added to the principal of the fund by vote of the members.

The by-laws provided for the election by the corporation of three members as trustees of the charity fund. On December 15, 1898, there was added to the by-laws: "The trustees of this fund shall pay the annual income to the treasurer of the association, which sum shall be credited by him to the committee of relief, and shall be in excess of the annual appropriations for this work. At the end of each year, the unexpended balance, if any, standing on the books of the association to the credit of this committee shall be paid by the treasurer to the trustees of the charity fund, until the amount of said fund shall reach the sum of fifty thousand dollars." This limitation was removed in 1907 by a by-law in terms the same as article VII, § 5, of the by-laws adopted in 1927, quoted below.

For many years the trustees have held the securities in their names as trustees and in a deposit vault not accessible to other officers. The bank accounts have been in their names as trustees. The by-laws for years have provided that "the committee on finance shall have the general oversight of the finances of the association, examine its expenditures and if found correct approve the same. They shall examine the accounts of the treasurer, secretary, committee of relief and trustees of the charity fund as often as they may elect, either as a committee, or individually, and annually by the employment of a certified public accountant, rendering a report to the association at the annual meeting." For many years all bills of the trustees, such as deposit box rental and auditing, have been paid directly by the treasurer. For several years the trustees have made payments from the income of the charity fund to the treasurer to reimburse him for amounts paid to persons whose applications

have been approved by the committee of relief, and who, under the by-laws, must be master mechanics or their families and dependents. Such payments always have been less than the income of the fund, and the trustees have added the unexpended income to principal. This course was pursued for over fifty years with the general knowledge of the corporation, its members and officers, and was never questioned until July 8, 1944, when the corporation filed a petition in the Probate Court seeking to compel payment of the real estate taxes out of this fund. That petition was dismissed for lack of jurisdiction. *Massachusetts Charitable Mechanic Association* v. *Hersey*, 318 Mass. 518.

The last comprehensive set of by-laws was adopted July 20, 1927. They continued in effect with immaterial amendments until November 28, 1945, and whether they continued in effect thereafter is one of the questions for our determination. Pertinent portions of those by-laws will be found in a footnote. [1]

---

[1] "Article IV. Officers and committees. Section 1. The officers of this association shall be a president, a vice-president, and thirteen trustees, who shall together constitute the 'board of government of the Massachusetts Charitable Mechanic Association'; a secretary-treasurer who shall be the same person, an assistant secretary-treasurer who shall be the same person, a committee of relief, a committee on finance, a committee on building, a committee on nominations and trustees of the charity fund." "Article VII. Duties of officers and committees. Section 5. The charity fund already established shall be maintained by the trustees of said fund and their successors, the income only of which shall be expended, and that only in maintaining the charitable work of the association, as now or hereafter may be provided by the by-laws. All money belonging to this fund shall be invested by the trustees in such securities only as are prescribed by the statute for the investment[s] of the savings banks of this Commonwealth. The trustees of this fund shall add the accumulated interest, or any part thereof, to the principal as often as may be found practicable. For adequate cause any trustee may be removed at any regular meeting of the association by a vote of three fourths of the members present and voting, provided that notice of such proposed action is given on the notices of such meeting. Any trustee who from any cause ceases to be a member of this association shall thereupon cease to be a trustee. The trustees shall make a written report of the condition of their trust at each annual meeting of the association, their accounts having first been audited by the finance committee or by a certified public accountant employed by them for that purpose. The trustees of the charity fund shall act as trustees of the sum of eight thousand dollars bequeathed to this corporation by the will of Charles R. McLean, to be known as the Charles R. McLean fund, shall keep the same safely invested and pay out the income thereof upon the order of the board of government in accordance with the terms of said will." "Article XII. Amendment or repeal of these by-laws. Section 1. The foregoing by-laws may be amended or repealed whenever three fourths of the members present and voting at any meeting of the association shall so determine, but no such alteration shall be made unless the subject shall have been proposed at a previous meeting, and in the meantime referred to a committee whose report in detail shall be borne upon the notices for the meeting at which it is to be considered."

The first steps toward amending the by-laws in respects now material occurred on October 17, 1945, at a quarterly meeting of the association.    Notice was seasonably given as required by the by-laws, but it contained no reference to changes to be made in the by-laws or to any action on the subject.    The minutes of the meeting state the following: "The president said that after hearing the decision [318 Mass. 518] the board of government decided that an amendment to the by-laws should be made to accomplish the transfer of funds from the charity to the general fund.    A committee was appointed and reported to the board, and the board unanimously recommends to the association that a committee be appointed to bring in a change in the by-laws by which money may be transferred from the charity to the general fund."    Over the objection of a Mr. Soule, doubtless one of the defendants, it was voted that "the president be empowered to appoint a committee of five with instructions to bring in the proposed change in the by-laws to facilitate the transfer of funds from the charity to the general fund." The president appointed such a committee.

On November 21, 1945, there was seasonably mailed in accordance with the by-laws a notice of a special meeting of the corporation to be held on November 28. [1]    Accompanying the notice was "report of committee on amendments of by-laws" [2] and a sheet containing a proposed

[1] The notice described the meeting as being "for the purpose of transacting the following business: 1. To act on the following motion: 'Under authority granted in section 5, article VII, of the by-laws of this association and all other power and authority, for adequate cause and by reason of a change in the policy of the association, the trustees of the charity fund be and are hereby directed to transfer into the custody of the treasurer of this association all the bonds, stocks, and all other property and assets belonging to the association in their custody or under their direction, within ten days of the passage of this vote, and that the trustees of the so-called charity fund shall act as investment committee until their successors are elected.'    2. To act on the report of the committee appointed at the quarterly meeting, October 17, 1945, to consider proposed changes in the by-laws.    3. To transact any other business that may legally come before said meeting."

[2] The report of the committee was, in brief, as follows: 1. Strike from article III, § 5, a provision that sums forfeited to the association when uncalled for by widows and children of members should be paid by the treasurer to the trustees of the charity fund.    2. Add to article V, § 2, relative to the terms of officers and committees and their election, provisions for an investment committee, and for the removal of officers and members of the board of government and of committees, and striking out the provision, "The trustees of the charity fund shall be chosen by the association at the next regular

amendment of article IV, § 1, quoted above, by striking from the list of officers the trustees of the charity fund and inserting an investment committee.

At the meeting of November 28 the motion contained in the notice was voted in some form, but this vote is agreed to be of no validity in this case because it preceded action on the amendment of the by-laws. It was further voted to change the name of the fund in one of the proposed amendments from "surplus" to "security." Mr. Soule objected to the validity of the votes. It was then voted twenty-seven to eight that "the motion as printed" and as amended be adopted.

On January 16, 1946, at a meeting of the corporation, duly called, it was unanimously voted to adopt the following recommendation: "Under section 5 of article VII of the by-laws as amended November 28, 1945, the board of

---

meeting after a vacancy occurs, notice of the same being given in the notice of the meeting." 3. Strike from article VII, § 3, a provision that the treasurer should pay to the trustees of the charity fund uncalled for funeral benefits. 4. Repeal article VII, § 5, hereinbefore quoted, and insert: "Section 5. The fund already established and known as the charity fund shall be maintained as a separate account by the treasurer, to be known as the surplus fund. This fund may be increased at any time by the addition of such funds as are recommended by the board of government and are voted by the association. The surplus fund and any additions to it, shall be invested by the treasurer as directed by a committee of three members of the association to be known as the investment committee, but only in such investments as are prescribed by statute for the investment of funds by Massachusetts savings banks. The income from funds so invested shall be available for the purposes of the relief committee of the association. The so called trustees of the charity fund shall act as the investment committee until their successors are elected, as provided in section 2 of article V, as hereby amended. The expenditure of money from the surplus fund, other than income, shall be only in such amounts as shall be recommended by the board of government to the members of the association at any regular quarterly meeting or special meeting of the association. Notice of such meeting shall contain the amount and the purpose of the expenditure, and then money may be expended only when two thirds of the members present and voting shall have voted in the affirmative. All bequests which have been or may at any future time be made to the association shall be in the custody of the treasurer, and if given for a special purpose shall be maintained in a separate account by him, giving the name of the testator unless otherwise directed by the testator. Such bequests shall be invested by the treasurer in such manner as may be directed by the investment committee, but only in such investments as are provided by statute for the investment of funds by Massachusetts savings banks. If no special instructions are made in such bequests, they shall be added to the surplus fund. The treasurer shall each year at the annual meeting in January submit to the members of the association . . . [an] account of the bequest funds in his possession, the income derived from them, and how it was expended." 5. Strike from article VII, § 9, relative to the duties of the committee on finance to examine certain accounts, the trustees of the charity fund and substitute the investment committee.

government unanimously recommends to the association the withdrawal and expenditure of $106,073.98 from the security fund for the purpose of paying taxes, interest, and costs due to the city of Boston for the years 1943, 1944, 1945 on the real estate of the association located on Huntington Avenue, Boston." On January 28, 1946, the treasurer wrote a letter to the "members of the investment committee . . . formerly known as trustees of the charity fund," demanding the payment of this sum and asking when the fund itself would be given to him. On January 30, 1946, the "trustees of the charity fund" replied that they had been advised by counsel that compliance with the treasurer's request would expose them "to a charge of misapplication of the charity fund," and that it was their duty not to comply without an order of court.

We first consider whether the amendments to the by-laws were properly adopted. We pass by the question whether the subject was properly before the meeting of October 17, 1945. We do not know what were the provisions of the by-laws as to notices of meetings, nor do we know the exact wording of the notice. See *People's Mutual Ins. Co.* v. *Wescott,* 14 Gray, 440, 442; *Gray* v. *Christian Society,* 137 Mass. 329, 331, 332; *Downs* v. *Bowdoin Square Baptist Society,* 149 Mass. 135, 139. The by-laws, however, do provide that no amendment shall be made unless proposed at a previous meeting and referred to a committee "whose report in detail shall be borne upon the notices for the meeting at which it is to be considered." "By-laws constitute in effect a contract between the different members and the corporation." *Bushway Ice Cream Co.* v. *Fred H. Bean Co.* 284 Mass. 239, 245, and cases cited. It is clear that the only proposal made at the meeting of October 17 was "a change in the by-laws by which money may be transferred from the charity to the general fund." If we assume that the surplus fund referred to in the report of the committee is the general fund, and that no substantial change was made by changing the name to security fund, it is nevertheless the fact that the amendments to the by-laws which were adopted included much more than any matter proposed

at the earlier meeting. The offices of trustees of the charity fund were abolished. The custody of the fund under a new name was entrusted to the treasurer. An investment committee was created. The investment of the fund was confided to the treasurer under the direction of the investment committee. Without elaborating further on the effect of the amendments we are of opinion that the amendments were not in accordance with the by-laws and were not validly adopted. It is unnecessary to consider the further objection that the abolition of the offices of trustees of the charity fund was invalid because not considered in the report of the committee.

In view of the fact, however, that this is the second attempt to obtain a decision from this court upon the question whether the charity fund is irrevocably dedicated to charitable purposes, the while the corporation is unable to meet tax obligations on its real estate, it is appropriate that we should express our opinion on the merits of that question, which have been fully argued. See *Wellesley College* v. *Attorney General*, 313 Mass. 722, 731. The corporation had been in existence over eighty years before it first voted to establish a charity fund. Three years later, in 1889, it adopted a by-law defining the fund, and authorizing the expenditure of income only, and "that only in maintaining the charitable work of the association as now or hereafter may be provided in the by-laws." This provision was substantially unchanged thereafter. The defendants contend that the by-laws, in whatever way amended, could not lawfully divert the money from the charitable work of the corporation; that this would preclude the payment from the fund of taxes on the real estate, which was never an object but merely a method of carrying out the charitable work; and that "the 'charitable work' of the association is the real owner of the fund."

Attempts to transfer the powers and duties of charitable trustees or charitable corporations, or to merge their activities or their assets, often beget difficult legal questions. In general, the trustees of a charity may not delegate their powers and duties to others, much less substitute new trus-

tees for themselves. *Harvard College* v. *Society for Promoting Theological Education*, 3 Gray, 280. *Second Religious Society of Boxford* v. *Harriman*, 125 Mass. 321, 328. *Winthrop* v. *Attorney General*, 128 Mass. 258. *Morville* v. *Fowle*, 144 Mass. 109. *Dickey* v. *Trustees of Putnam Free School*, 197 Mass. 468, 470–471. *Trustees of Andover Seminary* v. *Visitors*, 253 Mass. 256. *Boston* v. *Curley*, 276 Mass. 549, 562. *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 454. Scott on Trusts, §§ 171, 171.1. See *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 62. "It is not within the power of the Legislature to terminate a charitable trust, to change its administration on grounds of expediency, or to seek to control its disposition under the doctrine of cy pres." *Opinion of the Justices*, 237 Mass. 613, 617. *Cary Library* v. *Bliss*, 151 Mass. 364. *Adams* v. *Plunkett*, 274 Mass. 453, 462–463. A change of trustees, when necessary, is made by judicial decree. *Fellows* v. *Miner*, 119 Mass. 541, 545. *Second Religious Society of Boxford* v. *Harriman*, 125 Mass. 321, 328. *Sears* v. *Chapman*, 158 Mass. 400. *Boston* v. *Doyle*, 184 Mass. 373, 382–383. *Crawford* v. *Nies*, 220 Mass. 61. *Eliot* v. *Trinity Church*, 232 Mass. 517. Whether it may be made by legislative act is questionable. *Ware* v. *Fitchburg*, 200 Mass. 61, 72. *Crawford* v. *Nies*, 220 Mass. 61, 65. *Opinion of the Justices*, 237 Mass. 613.

The present case relates to a charitable corporation rather than to a charitable trust created by will or gift. It is true that they are comparable in many respects. *Sears* v. *Attorney General*, 193 Mass. 551. *Smith* v. *Livermore*, 298 Mass. 223, 236. *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 334. *Wellesley College* v. *Attorney General*, 313 Mass. 722, 724. *Old Ladies' Home Association* v. *Grubbs' Estate*, 191 Miss. 250. Scott on Trusts, § 348.1. But the purposes for which a charitable corporation holds its own property not given to it on any express trust (*Chase* v. *Dickey*, 212 Mass. 555, 561–562) are determined by general statute or by its charter rather than by contract with some founder or his estate. *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass.

330, 334. *Brigham* v. *Peter Bent Brigham Hospital,* 134 Fed. 513, 517 (C. C. A. 1). *Winchester* v. *Cox,* 129 Conn. 106. *Waters* v. *Order of the Holy Cross,* 155 Md. 146. *Bird* v. *Merklee,* 144 N. Y. 544. *Sherman* v. *Richmond Hose Co.* 230 N. Y. 462. *St. Joseph's Hospital* v. *Bennett,* 281 N. Y. 115. See Lincoln, 25 Va. L. Rev. 764.

The Legislature, in chartering the corporation, made it the sole custodian, manager, and almoner of its funds. What the defendants argue has been done goes far beyond the assistance of one charitable corporation by another. See *Enos* v. *Church of St. John the Baptist,* 187 Mass. 40, 44–45; *Chase* v. *Dickey,* 212 Mass. 555, 562; *Harvard College* v. *Attorney General,* 228 Mass. 396, 407; *Boston Safe Deposit & Trust Co.* v. *Stratton,* 259 Mass. 465, 475–476. We think that any action of the corporation, at least in the absence of statutory authority, whereby it attempted to divest itself of a large part of its assets by creating a charitable trust with individuals as trustees, must be deemed beyond its powers and ineffectual. *Hobbs* v. *Board of Education of Northern Baptist Convention,* 126 Neb. 416, 435. *Northwestern University* v. *Wesley Memorial Hospital,* 290 Ill. 205, 214–215. If the trustees of the charity fund are not mere officers and agents of the corporation and constantly subject to its control, they have no right to hold and manage the fund and should restore it to the corporation. But since regularity and lawfulness in corporate acts are to be presumed (*Moroni* v. *Brawders,* 317 Mass. 48, 52–53, and cases cited), we are of opinion that by its equivocal acts the corporation did not intend or undertake to set up the trustees of the charity fund as an independent body, that such trustees are not trustees at all in the legal sense but are mere officers and agents of the association and subject constantly to its control, and that the corporation owns the charity fund just as it does its other assets, subject to the provisions of its statutory charter.

*Bill dismissed.*