ISRAEL N. SAMUELS & others *vs.* ATTORNEY GENERAL
& others.

Suffolk.    November 9, 1977. — December 8, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Trust,* Charitable trust.    *Charity.    Knights of Pythias.    Fraternal Organization.*

A charitable fund established by a fraternal and benevolent association could not be used for the purchase of land and construction of a regional hall for the use of the association. [849]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 12, 1974.

On transfer to the Probate Court for the county of Suffolk, the case was heard by *Warner, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Samuel W. Gaffer* for Israel N. Samuels & others.

*Joseph Wine,* for Arthur I. Teplitz & others, submitted a brief.

*Mary Joann Reedy,* Assistant Attorney General, for the Attorney General.

*Willard C. Lombard* for James C. Bayley.

BRAUCHER, J.   The question before us is whether funds of the Massachusetts Pythian Relief Fund (Fund) can properly be used for the purchase of land and the construction of a regional hall for the use of the Grand Lodge, Knights of Pythias, of the Domain of Massachusetts (Lodge). A judge of a Probate Court ruled that the Fund is subject to the principles and rules applicable to charitable trusts, and that it may not be so used. Appeals were taken, and we allowed the Attorney General's application for direct appellate review. We affirm the judgment entered in the Probate Court.

On December 12, 1974, the Grand Trustees of the Lodge (trustees) brought this action for a declaratory judgment in the Supreme Judicial Court for Suffolk County. When it appeared that the facts were in dispute, a single justice of this court ordered the case transferred to the Probate Court for trial. On agreement of counsel, a judge of the Probate Court entered an order establishing the facts alleged in the trustees' complaint. The parties stipulated to additional facts, and evidence was taken. The judge filed findings of fact and conclusions of law and entered the judgment appealed from.

We summarize the facts thus established. The Order of the Knights of Pythias is secret, and its purposes are fraternal and benevolent. The Supreme Lodge, Knights of Pythias (Supreme Lodge), is a corporation existing by vir-

tue of a Federal statute enacted in 1894. The Lodge exists by virtue of a charter issued by the Supreme Lodge in 1869. After World War I, the Lodge had received some $14,000 returned from a national War Relief Fund, established to provide relief for returning veterans and their families. A committee of the Lodge recommended to the Lodge's 1922 convention the establishment of what became the Fund. The committee rejected a proposal for "the establishment of a Pythian social center in Boston" as "not the proper aim for a fund raised for benevolent work." Instead it recommended that the fund "be kept for real benevolence in a larger way and a larger sphere than the average individual Lodge can undertake, for such calls as properly come to the Order as a whole, to meet sudden catastrophes or emergencies, to do at once when the help is needed the work so frequently done in the past slowly and painfully after special appeals for funds."

The 1922 convention of the Lodge voted to establish the Fund, with the purpose "to provide immediate or temporary relief in cases of destitution and distress among the membership of the order of this Grand Domain, to assist in relief in cases of calamity within or without this Grand Domain; and especially to see that members who served in the World War are protected by way of relief to the same extent as if War Relief Fund continued in force." The Fund was to consist of money received from the War Relief Fund and additions by bequest, gift, legal appropriation or other action of the Lodge, and was to be held and invested by the trustees. The 1924 convention of the Lodge voted an annual levy of thirty cents per capita, to be added to the Fund, the income to be used in accordance with the act establishing the Fund "and acts in amendment thereof." The per capita levy was reduced to fifteen cents in 1952 and was abolished in 1956. Five bequests were added to the Fund from 1931 to 1974. Other increments to the Fund included interest and dividend income, small amounts from mileage allowances, gains from sales of securities, and a gift.

Pursuant to the "Grand Statutes" of the Lodge, annual

conventions of the Lodge have several times amended the provisions governing the Fund. The present provision as to purpose is "to provide relief in cases of destitution and distress among the members of this Grand Domain and their dependents, to assist in relief in cases of calamity within and without this Grand Domain, *and to expend such sums for the advancement of the order as the Grand Lodge or the Executive Council may prescribe, subject to the approval of the Commissioners of Relief, and to assist transient members from other domains who may be found in distress in this domain.*" The matter in italics was added in 1966.

After that 1966 amendment, money from the Fund was used to finance studies of the future of the Order. In 1921 the Lodge had sixty-three subordinate lodges and more than 31,000 members; by 1974 there were forty-six subordinate lodges and only 5,500 members. A "revitalization program" was authorized and financed from the Fund. A controversy arose within the Order as to the propriety of the use of the Fund for such purposes, specifically the acquisition of land and a new building. The controversy was referred to the "Grand Tribunal" of the Lodge, which ruled that the proposed expenditure was illegal; on appeal to the national "Supreme Tribunal," the matter was remanded for reconsideration. The "Grand Tribunal" reaffirmed their previous ruling, but on a second appeal the "Supreme Tribunal" in 1974 reversed that ruling and upheld the proposed expenditure.

During the life of the Fund up to March 1, 1974, substantially all of its disbursements, a total of $346,000, have been made for relief; its market value in 1975 was about $980,000. The Order is registered with the Attorney General as a public charity, as is the Fund. Both the Lodge and the Fund are exempt from Federal income tax pursuant to a ruling under I.R.C. § 501(c)(8), relating to fraternal benefit societies.

"Gifts to trustees or to eleemosynary corporations, accepted by them to be held upon trusts expressed in writing or necessarily implied from the nature of the transaction,

constitute obligations which ought to be enforced and held sacred under the Constitution." *Opinion of the Justices*, 237 Mass. 613, 617 (1921). "A trust for the general purposes of a fraternal organization which is not a charitable organization is not charitable. On the other hand, a trust for the relief of poor members of such an organization or for needy members of their families is charitable." Restatement (Second) of Trusts § 375, Comment e (1959). See *Peakes* v. *Blakely*, 333 Mass. 281, 284 (1955), and cases cited; 4 A. Scott, Trusts § 375.2 (3d ed. 1967).

The statement of purpose in the 1922 convention vote to establish the Fund was an express commitment of the Fund to the purposes set out. The commitment is not less binding if an express trust was not created. See *Newhall* v. *Second Church & Soc'y of Boston*, 349 Mass. 493, 499 (1965), and cases cited; Restatement (Second) of Trusts § 348, Comment f (1959); 4 A. Scott, Trusts § 348.1 (3d ed. 1967). Cf. *Attorney Gen.* v. *President & Fellows of Harvard College*, 350 Mass. 125, 139 (1966) (stating obligation under express trust). Once money or other property was given to the Fund for the stated purpose, use of the property was confined to the particular purpose for which the money or other property was given, and could not be diverted to other purposes by a subsequent amendment of the vote. See *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 334 (1941).

The parties have discussed at length our decision in *Massachusetts Charitable Mechanic Ass'n* v. *Beede*, 320 Mass. 601 (1947). There a charitable corporation established a "charity fund," the income only to be expended in maintaining the charitable work of the corporation. The principal of the charity fund included contributions from seven persons, but for the most part was derived from the operations of the corporation. We thought "that any action of the corporation, at least in the absence of statutory authority, whereby it attempted to divest itself of a large part of its assets by creating a charitable trust with individuals as trustees, must be deemed beyond its powers and ineffectual." Hence, presuming regularity and lawfulness,

we held that "by its equivocal acts the corporation did not intend or undertake to set up the trustees of the charity fund as an independent body, that such trustees are not trustees at all in the legal sense but are mere officers and agents of the association and subject constantly to its control, and that the corporation owns the charity fund just as it does its other assets, subject to the provisions of its statutory charter." *Id.* at 611.

We think that holding is inapplicable to the present case. First, the Lodge is a fraternal and benevolent association rather than a charitable corporation, and the charitable purpose of the Fund is only one of the purposes of the Lodge. Second, most of the principal of the Fund was received by the Lodge for the purpose of the Fund; the Lodge did not attempt "to divest itself of a large part of its assets." We think the 1922 vote of the Lodge was entirely within the powers of the Lodge, and those who contributed to the Fund before 1966 were entitled to have their money used for the stated purpose. It follows that the Fund cannot be used for the purchase of land and the construction of a regional hall for use by the Lodge.

*Judgment affirmed.*