ATTORNEY GENERAL *vs.* HAHNEMANN HOSPITAL & others[1]
(and a consolidated case[2]).

Suffolk. December 5, 1985. — July 2, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Charity. Attorney General. Fiduciary. Corporation,* By-laws, Charitable
corporation, Sale of assets. *Trust,* Charitable trust.

In replying to a reported question of law, this court observed that G. L.
c. 180, § 6, authorized trustees of a charitable corporation to sell the
corporation's assets; however, in view of the other issues presented, it
expressed no view on the manner in which the trustees of a certain
charitable corporation might properly exercise their statutory power to
sell a hospital operated by the corporation. [827-829]

The trustees of a charitable corporation, who comprised the entire member-
ship of the corporation, violated no fiduciary duty by amending the
corporation's articles of organization to authorize the sale of its assets,
where the amendment, which was authorized by G. L. c. 180, § 6, was
inconsistent neither with the preexisting provisions of the articles of
organization nor with the terms of a trust under which the corporation
was beneficiary. [829-830]

A proposed sale of the assets of a certain charitable corporation which, for
over forty years, had operated a hospital, would not, in itself, violate
any fiduciary duty of the corporation's trustees arising under the terms
of a trust under which the corporation was beneficiary, and which spe-
cifically contemplated such a sale. [830-833]

A proposed sale of assets of a certain charitable corporation, which, as its
sole activity for over forty years, had operated a hospital, would not
constitute a closing of the corporation's affairs necessitating a dissolution
proceeding under G. L. c. 180, § 11A, where the corporation had
amended its articles of organization to include other corporate purposes
and where it was not alleged either that the amendments were invalid
or that the newly stated purposes could not be fulfilled. [833]

[1] Board of Trustees of Hahnemann Hospital, Community Care Systems,
Inc., and Hahnemann Partners Limited Partnership. We acknowledge the
briefs of amici curiae, Federation of American Hospitals and Massachusetts
Health Action Alliance.

[2] Hahnemann Hospital *vs.* Attorney General.

Proceeds of the sale of assets of a charitable corporation attributable to
donations from a certain trust, the terms of which were incorporated by
reference in the corporation's by-laws, as well as proceeds from other
unrestricted funds received by the corporation prior to the date it amended
its articles of organization to state additional corporate purposes, could
properly be expended only for purposes consistent with the trust instru-
ment; however, unrestricted funds received by the corporation after the
date of the amendment might be used for its newly added purposes
irrespective of the trust's provisions, if these purposes are otherwise
permissible. [833-836]
This court expressed disapproval of the view that a charitable corporation
may apply its unrestricted funds to any charitable purpose which, by
amendment, it adds to its articles of organization. [836]

CIVIL ACTIONS commenced in the Supreme Judicial Court
for the county of Suffolk on February 13, 1985.

The cases were reported by *Nolan, J.*

*Leslie G. Espinoza,* Assistant Attorney General (*Kevin A.
Suffern,* Assistant Attorney General, with her) for the Attorney
General.

*Kenneth Laurence* (*Christopher M. Jedrey* with him) for
Hahnemann Hospital & another.

*Arnold P. Messing* for Community Care Systems, Inc.

*Carl Weissburg & Patricia E. Sinskey,* of California, for
Federation of American Hospitals, amicus curiae, submitted
a brief.

*Audrey Zucker,* for Massachusetts Health Action Alliance,
amicus curiae, submitted a brief.

ABRAMS, J. On February 13, 1985, the Attorney General
and the Hahnemann Hospital (Hahnemann) simultaneously
filed complaints for declaratory relief pursuant to G. L. c. 231A,
§ 1 (1984 ed.), G. L. c. 214, § 1,[3] and G. L. c. 180,
§ 11A.[4] The Attorney General, acting pursuant to his common

---

[3] General Laws c. 214, § 1 (1984 ed.), provides: "The supreme judicial
and superior courts shall have original and concurrent jurisdiction of all
cases and matters of equity cognizable under the general principles of equity
jurisprudence and, with reference thereto, shall be courts of general equity
jurisdiction."

[4] General Laws c. 180, § 11A (1984 ed.), provides: "A charitable corpo-
ration constituting a public charity organized under the provisions of general

law and statutory authority to see to the due application of charitable funds, seeks to enjoin the sale of all the assets of Hahnemann, a charitable corporation, to a for-profit corporation, Community Care Systems, Inc. (CCS).[5] The Attorney General requests a declaration that such a transfer is beyond the authority of the Hahnemann board of trustees (board) because it is equivalent to closing Hahnemann's affairs, which may be accomplished only in the manner prescribed by G. L. c. 180, § 11A. The Attorney General also seeks a declaration that Hahnemann cannot abandon its charter purpose by amending its articles of organization.

Hahnemann, in its complaint, seeks a declaration that the proposed sale is allowed under G. L. c. 180, § 6 (1984 ed.), and under the terms of the Mary Ida Converse Trust (Converse trust), which provided much of the original funding for the hospital. A single justice of this court consolidated the cases and reserved and reported to the full bench the following issues of law:

"1. Whether the board of trustees of Hahnemann Hospital (the hospital), a charitable corporation, is legally authorized to sell all the assets of the hospital, including the hospital's goodwill and, to the extent transferable, its license to provide hospital services."

"2. Whether the board of trustees of the hospital violated

---

or special law, which desires to close its affairs may, by vote of a majority of its board of directors, authorize a petition for its dissolution to be filed in the supreme judicial court setting forth in substance the grounds of the application for dissolution and requesting the court to authorize the administration of its funds for such similar public charitable purposes as the court may determine. The provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable corporation." Only the Attorney General sought a declaration of the corporation's status under G. L. c. 180, § 11A.

[5] Questions about the relative merits, on public policy grounds, of for-profit and not-for-profit hospitals are not before us. CCS asserts that applicable Federal and State health care regulations, including cost controls, apply to both forms of operation and that, practically speaking, there are no differences in the quantity and quality of public services provided. Those issues likewise are not before us.

its fiduciary duty to the hospital by amending the articles of organization of the hospital on May 23, 1984 to authorize the sale of all the assets of the hospital."

"3. Whether the board of trustees of the hospital will violate its fiduciary duty to the hospital by selling all the assets of the hospital."

"4. Whether the sale of all the assets of the hospital constitutes the closing of the affairs of a charitable corporation and whether by such sale the board of trustees of the hospital will violate its fiduciary duty to the hospital by closing the affairs without filing a petition for dissolution pursuant to G. L. c. 180, § 11A."

"5. Whether the board of trustees of the hospital will violate its fiduciary duty to the hospital by using any proceeds it receives from the sale of all the hospital's assets for the new purposes set forth in the September 18, 1985, restated articles of organization of the corporation."[6]

The parties stipulated to the facts. In 1892, the Charles N. Mellen Hahnemannian Hospital was organized as a nonprofit, charitable corporation "for the establishment and maintenance of a hospital for the reception and treatment of persons who may need medical or surgical attendance during sickness or injury . . . in accordance with the principles of homeopathy as promulgated by Samuel Hahnemann."[7] By 1932, however, a hospital had not yet been built. In that year, Mary Ida Converse established an inter vivos charitable trust for the support of a homeopathic hospital. In 1935, Hahnemann Hospital (as the Mellen Hahnemannian Hospital was by then known) pur-

---

[6] We have slightly reordered the issues reported for purposes of our discussion.

[7] Homeopathy is a system of drug therapy developed by Samuel Hahnemann (1755-1843). The system prescribes treatment of diseases "by the use of small doses of medicines which in large doses produce in a healthy person the same symptoms as the disease treated." 2 Schmidt's Attorneys' Dictionary of Medicine H-82 (1981).

chased land in Brighton with its own funds and funds it received from the Converse trust. From 1939 through 1940, Hahnemann constructed a hospital building solely using funds contributed by the Converse trust. Since then, it has continuously operated a hospital on that site, relying in part on contributions from Converse trust income and in part on numerous additional donations, contributions, and bequests received from individuals and organizations not connected with the Converse trust. In 1951, 1956, and 1967, the Probate Court in Middlesex County issued decrees authorizing amendments of the Converse trust to provide for additional payments out of trust principal to Hahnemann for the maintenance, operation, expansion, and modernization of Hahnemann's physical facilities.

In 1981, Hahnemann entered into a management agreement with CCS which granted an option to CCS to acquire all the assets of Hahnemann. In 1983, CCS indicated its intent to exercise the option. On May 23, 1984, the board authorized the sale of all Hahnemann's assets. In August, 1984, Hahnemann entered into a purchase and sale agreement with CCS, dated as of October 1, 1983. Under the agreement, Hahnemann will sell all its assets, including its good will and, to the extent transferable, its license to provide hospital services, excluding, however, its endowment, investment portfolio, interest in the Converse trust, and any bequests.[8] The agreement was made contingent on receipt by CCS of a determination of need from the Massachusetts Department of Public Health, which was given on March 14, 1985.[9] The proposed sale was also made contingent on the approval of the Attorney General and of this court.[10]

---

[8] CCS may assign its rights under the purchase and sale agreement to Hahnemann Partners Limited Partnership (HPLP). The identities of the limited partners are not disclosed on the record. The Attorney General does not argue in this proceeding that conveyance to HPLP would be a violation of fiduciary duty if any current or former hospital trustees are partners in HPLP.

[9] CCS has appealed certain aspects of that determination to the Superior Court.

[10] It is not clear by what means the parties expected the Attorney General to indicate approval, see *Brookline* v. *Barnes*, 327 Mass. 201, 207-208

The issues presented require a detailed examination of the relationship between the terms of the Converse trust and the articles of organization of the Hahnemann corporation. In the declaration of trust, Converse directed her trustees either to form a new corporation, or to "cause themselves to become all of the members of the Corporation now known as the *Hahnemann Hospital* and its governing and controlling body, provided that the Charter and By-Laws be *amended so as to comply with the provisions"* of the Converse trust (emphasis supplied). The Converse trustees took control of the Hahnemann Hospital corporation, amending its articles of organization as required. Article XX of Hahnemann's by-laws states: "All the provisions of the Declaration of Trust [the Converse trust] . . . applicable to the use of the income and principal of the fund thereby established, payable to this corporation and to the corporation or its members, are incorporated in these By-Laws by this reference and these By-Laws shall never be so amended as to be inconsistent therewith." Among the provisions of the Converse trust so incorporated, the following articles of the declaration of trust, as amended, are relevant to the issues presented:

"FIRST: The net income of this trust shall be used in the manner hereinafter provided for a Hospital for the reception and treatment of persons who may need medical or surgical attendance during sickness or injury and in which Hospital the practice shall be strictly in accordance with the principles of homeopathy . . . . If the Corporation . . . determine[s] that the practice of the principles of homeopathy as promulgated by Samuel Hahnemann has been so modified that it is unwise or impracticable to attempt to conduct the Hospital in strict accordance with said principles, the net income may be used for a Hospital in which the practice shall be as nearly in accordance with those principles as it shall . . . deem practicable, or

(1951), or what standard they expected this court to apply in reviewing the sale. We do not approve or disapprove the sale as such, see *infra*, but simply address the issues of law the single justice reported.

if it by such vote shall determine that it is unwise or impracticable to use said net income for a Hospital . . . the net income may be used for a Convalescent Home or Homes for men, women and children, or any of them. The net income shall, as hereinafter provided, be paid to and only to a charitable corporation incorporated under the laws of the Commonwealth of Massachusetts. The determination of the Corporation hereinafter . . . as to the application of income or of any of the questions above set forth shall be final and conclusive.

"SECOND: . . . .

" . . . .

" (c) For the purpose of carrying out the objects and purposes of this trust as and in the manner set forth in ARTICLE FIRST, the Corporation . . . may own and operate a HOSPITAL or HOSPITALS, or a CONVALESCENT HOME or HOMES, or may . . . receive the income of the Fund and distribute it to such other HOSPITAL or HOSPITALS, or CONVALESCENT HOME or HOMES, incorporated as charitable corporations under the laws of the Commonwealth of Massachusetts as it may select, but always strictly in accordance with the provisions and limitations set forth in ARTICLE FIRST.

" . . . .

"ELEVENTH: If at any time after principal of this fund shall have been paid to said Corporation [for the purpose of acquiring a hospital building and equipment] said Corporation shall sell its HOSPITAL property, the net proceeds shall be paid over to the Trustees to be added to the principal of the fund, and the amount so paid over may be re-paid to said Corporation for the purpose of acquiring another HOSPITAL or HOSPITALS . . . or for the purpose of acquiring a CONVALESCENT HOME or HOMES. The use to which said proceeds if re-paid shall be put shall in all instances be in accordance with the provisions of ARTICLE FIRST hereof, and as often as there shall be a sale the net proceeds shall be paid to the Trustees, subject

to like power of repayment, and the determination whether or not to make such repayment shall rest exclusively with the Trustees."

Hahnemann's by-laws, as amended through 1974, provided that the object of the corporation "shall be the establishment and maintenance of a hospital for the reception and treatment of persons who may need medical or surgical attendance during sickness or injury in accordance with the principles of homeopathy as promulgated by Samuel Hahnemann, or in accordance with the principles of orthodox medical and surgical practice." On September 18, 1985, the board amended Hahnemann's purposes to include maintenance and support of more than one charitable hospital, and added these new purposes: " (2) Establishing, maintaining, and supporting a convalescent home or homes that are exempt from income tax under Section 501(c)(3) of the Internal Revenue Code; and (3) Participating in any activity that promotes the health of the general public, including making distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code."

1. *Whether the board of trustees of Hahnemann Hospital . . . is legally authorized to sell all the assets of the hospital, including the hospital's good will and, to the extent transferable, its license to provide hospital services.* The term "legally authorized" admits of some ambiguity, for the board's authority potentially may be limited by statute and common law or by the terms of Hahnemann's articles of organization and the Converse trust. In view of the other issues reported, we address only the board's authority to sell under applicable statutory and common law.

Hahnemann asserts that it may sell any or all of its assets under the authority of G. L. c. 180, § 6.[11] Chapter 180, § 6,

---

[11] General Laws c. 180, § 6 (1984 ed.), provides: "A corporation shall have, and may exercise in furtherance of its corporate purposes, the powers specified in paragraphs (*a*) through (*d*), inclusive, and (*k*) of section nine of chapter one hundred and fifty-six B and the power to convey land to which it has a legal title. If and to the extent provided in its articles of organization the corporation shall have, and may exercise in furtherance of

authorizes charitable corporations, inter alia, to add to their by-laws the power granted to other (for-profit) corporations under G. L. c. 156B, § 9(f) (1984 ed.), specifically "to sell, convey, lease, exchange, transfer or otherwise dispose of . . . all or any of its property, or any interest therein, wherever situated." On May 23, 1984, by a vote of its members, Hahnemann amended the articles of organization and the by-laws to give it such power, exercisable on approval of the board and two-thirds of the members.[12] Hahnemann argues that, under the plain language of the statute, it may sell all its assets.

The plain language of G. L. c. 180, § 6, does authorize a charitable corporation to empower itself to sell any or all of its assets, but does not regulate *how* that power may be exercised, so long as it is not "in a manner inconsistent" with the General Laws. We note that the power of a for-profit corporation under G. L. c. 156B, § 9(f), to sell any or all of its assets is circumscribed by G. L. c. 156B, § 75 (1984 ed.), which specifies that such corporations may not sell "all or substantially all" their assets without a two-thirds vote of approval of each class of stock outstanding and entitled to vote. There is no precisely comparable provision in c. 180 covering charitable corporations. However, Hahnemann and CCS apparently assumed that the sale of all the assets of a charitable corpora-

_____

its corporate purposes, any one or more or all of the other powers specified in said section nine except in paragraph (*m*) thereof, and also the power specified in section nine A of chapter one hundred and fifty-six B, provided that no such power shall be exercised in a manner inconsistent with this chapter or any other chapter of the General Laws . . . .

   " . . . .

   "Any corporation may hold real and personal estate to an unlimited amount, which estate or its income shall be devoted to the purposes set forth in its charter or articles of organization or in any amendment thereof, and it may receive and hold, in trust or otherwise, funds received by gift or bequest to be devoted by it to such purposes; this provision shall be applicable notwithstanding the specification of a limited amount in any special law."

   [12] Under art. II, § 1, of Hahnemann's by-laws, the total number of members may not exceed twenty-five. Under art. II, § 4, all members are trustees; under art. VI, § 1, all trustees must be members. Thus, the members and trustees consist of the same group of persons.

tion would require the approval of the Attorney General and of this court. See *supra* at 824 & n.10.

This assumption may be correct. It may be that, when a charitable corporation intends to sell all or substantially all its assets, the corporation must seek court approval for the sale and must name the Attorney General as a party to the proceedings. G. L. c. 12, § 8G (1984 ed.). However, we need not decide this issue definitively, because Hahnemann and CCS have made their sale contingent on the approval of both the Attorney General and this court. If that approval is given, the proposed sale would be authorized under G. L. c. 180, § 6. Because the issue has not been argued and briefed as such, we neither approve nor disapprove the proposed sale.[13]

2. *Whether the board of trustees of the hospital violated its fiduciary duty to the hospital by amending the articles of organization of the hospital on May 23, 1984, to authorize the sale of all the assets of the hospital.* Section 6 of G. L. c. 180, by its plain language, permits a charitable corporation to provide in its articles of organization for certain of the powers allowed for-profit corporations, including the power to sell any or all of its property under G. L. c. 156B, § 9(f). See note 11, *supra*. "[W]e need not look beyond the words of the statute where the language is plain and unambiguous." *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984). The

---

[13] Hahnemann and CCS argue that the comprehensive State and Federal regulation of hospital operations supersedes and preempts the regulatory authority of the Attorney General and of the courts. We disagree. No issues of health care regulation are before us, and the Attorney General is not seeking enforcement of any health care statutes or regulations. This case concerns Hahnemann's authority to act as a *charitable corporation*; none of the health care statutes and regulations cited to us by the defendants purports to regulate Hahnemann's activities as a charitable corporation. As to the issues presented by this case, there is no "actual conflict" between State and Federal regulation. See *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142 (1963). Consequently, there is nothing to the claim of preemption. *Commonwealth Elec. Co.* v. *Department of Pub. Utils.*, ante 361, 375-376 (1986). Nor is there any overlap in the general regulatory authority of the Attorney General over charitable corporations and the specific authority of the Department of Public Health over health care. Thus, there is no implied repeal of the Attorney General's authority over charitable health care corporations. See *Emerson College* v. *Boston*, 393 Mass. 303, 306 (1984), and cases cited.

May 23, 1984, amendment is authorized by statute. It is not inconsistent with any preexisting provisions of Hahnemann's articles of organization or with any of the terms of the Converse trust. The Attorney General does not allege any irregularity in the voting procedure. Whatever might be said about compliance with the board's fiduciary duties in carrying out a sale, there is no violation of fiduciary duty merely by amending the articles of organization to provide for the possibility of a sale of all assets.

3. *Whether the board of trustees of the hospital will violate its fiduciary duty to the hospital by selling all the assets of the hospital.* As we discussed, *supra*, in response to issue 1, under G. L. c. 180, § 6, Hahnemann may sell all or substantially all of its assets as provided in the proposed contract. If some other fiduciary duty would prevent the sale, it must be located in the terms of the Converse trust.

After the sale, Hahnemann will no longer own and operate a hospital, although it retains in its articles of organization the power to do so. We assume from Hahnemann's representations that it intends to become a grant-making institution and does not presently intend to own or operate another hospital. In these circumstances, the sale of the hospital constitutes an abandonment of Hahnemann's principal activity for the past four decades, the sole purpose for which it was first organized in 1892 and for which it accepted gifts until its charter amendment on September 18, 1985.[14] Unless that abandonment is contemplated and permitted under the terms of the Converse

---

[14] Prior to the amendment, the corporation's object was "the establishment and maintenance of a hospital for the reception and treatment of persons who may need medical or surgical attendance during sickness or injury in accordance with the principles of homeopathy as promulgated by Samuel Hahnemann, or in accordance with the principles of orthodox medical and surgical practice." Since the amendment, its purposes are: "(1) Establishing, maintaining, and supporting a charitable hospital or hospitals that receive and treat persons who may need medical or surgical attendance during sickness or injury in accordance with the principles of homeopathy . . . or . . . orthodox medical and surgical practice; (2) Establishing, maintaining, and supporting a convalescent home or homes . . .; and (3) Participating in any activity that promotes the health of the general public, including making distributions to [other nonprofit] organizations."

trust, the sale violates Hahnemann's fiduciary duties in the administration of the Converse funds; the board members would violate their fiduciary duty to the corporation if they caused Hahnemann to violate its duty to the trust.

Article eleventh of the Converse trust specifies that, if Hahnemann sells its hospital property, the net proceeds are to be paid over to the Converse trustees, who may, in turn, repay the funds to Hahnemann for the purpose of acquiring another hospital or hospitals, in accordance with the provisions of art. first. Although art. eleventh directs the disposition of proceeds upon sale, it does not by its terms limit the conditions in which a sale may be made.

Article first directs Hahnemann to use the net income of the trust for a hospital, but if it determines "that it is unwise or impracticable" to do so, the net income may then be used for a convalescent home or homes. However, art. second permits Hahnemann to own and operate a hospital or to "receive the income of the Fund and distribute it to such other HOSPITAL or HOSPITALS, or CONVALESCENT HOME or HOMES, incorporated as charitable corporations under the laws of the Commonwealth of Massachusetts as it may select, but always strictly in accordance with the provisions and limitations set forth in ARTICLE FIRST."

"Trust instruments must be construed to give effect to the intention of the settlor as ascertained from the language of the whole instrument considered in the light of the attendant circumstances." Harrison v. Marcus, 396 Mass. 424, 429 (1985). Clearly, Converse's primary intent was to support directly the operation of a hospital, but she contemplated and approved the possibility that Hahnemann would operate and maintain convalescent homes, or might decide to support other hospitals or convalescent homes that provided homeopathic care. These secondary purposes were not, however, to be pursued unless Hahnemann first determined it to be "unwise or impracticable" to use the income to operate a hospital. The board accepted the Converse trust funds, built a hospital, and operated it for more than forty years. Under the terms of the Converse trust, it may not abandon that activity and apply the

funds to financial support of other hospitals and convalescent homes unless it decides that it is unwise or impracticable to continue to operate the hospital. There is no indication on the record that the board has made such a determination. However, if such a determination has been or is made, the sale of all Hahnemann's assets which results in cessation of its operation of a hospital will not violate the terms of the Converse trust.[15]

The Attorney General also argues that sale of the hospital would violate the board's fiduciary duty to the corporation under the rule in *Massachusetts Charitable Mechanic Ass'n* v. *Beede*, 320 Mass. 601 (1947). In *Beede*, we stated that "any action of the corporation, at least in the absence of statutory authority, whereby it attempted to divest itself of a large part of its assets by creating a charitable trust with individuals as trustees, must be deemed beyond its powers and ineffectual." *Id.* at 611. As we discussed above, the sale of all the corporation's assets is at least statutorily authorized by G. L. c. 180, § 6. We need not decide whether § 6 provides the statutory exception contemplated in *Beede*. *Beede* condemned the transfer of most of a charitable corporation's assets to a charitable trust fund established *after* the founding of the corporation. The terms of the Converse trust, incorporated by reference in Hahnemann's by-laws, specifically contemplate a sale of the hospital. On that occurrence, the "net proceeds"[16] revert to the Converse trust, from which they may be repaid to Hahnemann if the corporation acquires another hospital or a convalescent home. Even if there is no repayment of principal to Hahnemann, the Converse trustees will continue to pay trust income to Hahnemann, which may be used for contributions to other charitable hospitals and convalescent homes under the terms

---

[15] The Attorney General argues that the board also would violate its fiduciary duty to donors of unrestricted gifts by abandoning the purpose for which it was organized and had held itself out to the public. On the view we take of the relationship between the Converse trust and Hahnemann's articles of organization, see discussion at issue 5, *infra,* we need not decide that issue.

[16] We need not decide how to determine the "net proceeds" allocable to Converse trust principal.

of art. second of the trust. Because the terms of the Converse trust and, consequently, the corporation's by-laws, specifically contemplate a sale of the hospital, our holding in *Beede* does not apply.

4. *Whether the sale of all the assets of the hospital constitutes the closing of the affairs of a charitable corporation and whether by such sale the board of trustees of the hospital will violate its fiduciary duty to the hospital by closing the affairs without filing a petition for dissolution pursuant to G. L. c. 180, § 11A.* The Attorney General argues that Hahnemann's abandonment of its sole activity is, in effect, a dissolution requiring compliance with the § 11A procedures. Hahnemann responds that it does not intend to close its affairs, but instead will become a grant-making institution in accordance with its newly amended corporate purposes.

There can be little doubt that, in the absence of amendment of its purposes, the abandonment by Hahnemann of the sole activity authorized by its articles of organization — maintaining a hospital — would render Hahnemann an empty shell, unable to fulfil its purposes. See *Stone* v. *Framingham*, 109 Mass. 303, 305 (1872). In that instance, a dissolution proceeding under § 11A would be required.

In this case, however, Hahnemann has amended its articles of organization to include "[e]stablishing, maintaining, and supporting a charitable hospital or hospitals," and "a convalescent home or homes," and "[p]articipating in any activity that promotes the health of the general public." Hahnemann represents that it intends to function as a grant-making institution to fulfil these purposes. There is no suggestion that the amendments are invalid or that the newly stated purposes are unattainable. Hahnemann is not winding up its affairs, and need not do so as a matter of law.

5. *Whether the board of trustees of the hospital will violate its fiduciary duty to the hospital by using any proceeds it receives from the sale of all the hospital's assets for the new purposes set forth in the September 18, 1985, restated articles of organization of the corporation.* Under G. L. c. 180, § 6, a charitable corporation "may receive and hold, in trust or

otherwise, funds received by gift or bequest to be devoted by it to such purposes" as stated "in its charter or articles of organization or in any amendment thereof."

General Laws c. 180, § 7 (1984 ed.), provides in pertinent part: "A corporation may authorize, at a meeting duly called for the purpose, by vote of two thirds of its members legally qualified to vote in meetings of the corporation . . . any amendment of its articles of organization, *including a change of its purposes* or name . . . provided that any provision added to or change made in its articles of organization by such amendment could have been included in, and any provision deleted thereby could have been omitted from, original articles of organization filed at the time of such meeting" (emphasis added). The plain language of the statute appears to permit a charitable corporation to amend its purposes, subject to the limitation that the amended purposes could have been adopted in original articles of organization filed at the time of the meeting at which the amendment is voted.

The Attorney General argues, nonetheless, that trust law must be read into § 7, to limit amendments to those that further the "dominant charitable purpose." The Attorney General maintains that this limitation is necessary to ensure that charitable donations are used for the purposes their donors intended.

The Legislature, in adopting G. L. c. 180, § 7, did not limit the scope of amended purposes to those that "further the dominant charitable purpose." We will not read into the plain words of the statute an intent not expressed by them. *Tilton* v. *Haverhill*, 311 Mass. 572, 578 (1942). If, as the Attorney General suggests, such a limitation is necessary for the protection of charitable donations, he should recommend to the Legislature that the statute be amended.

We need not decide this issue on statutory grounds, however, because the terms of the Converse trust limit the disposition of proceeds from the sale. The initial contribution of funds from the Converse trust to Hahnemann was predicated on amendment of its charter and by-laws "so as to comply with the provisions" of the trust. In art. XX, the Hahnemann by-laws incorporate by reference the terms of the trust and provide that

"these By-Laws shall never be so amended as to be inconsistent therewith." Article XX thereby gave notice to donors that Hahnemann's purposes could include those of the Converse trust, and also promised those donors that their contributions would not be devoted to purposes inconsistent with those of the Converse trust. See *Trustees of Andover Theological Seminary* v. *Visitors of the Theological Inst. in Phillips Academy,* 253 Mass. 256, 272-273 (1925); *Cary Library* v. *Bliss,* 151 Mass. 364, 377 (1890). Consequently, otherwise unrestricted donations made to Hahnemann before the September 18, 1985, amendment are subject to the same restrictions as Converse trust contributions.

Prior to the 1985 amendment, Hahnemann's articles of organization stated that the object of the corporation "shall be the establishment and maintenance of a hospital for the reception and treatment of persons who may need medical or surgical attendance during sickness or injury in accordance with the principles of homeopathy as promulgated by Samuel Hahnemann, or in accordance with the principles of orthodox medical and surgical practice." As is evident from our discussion in response to issue 3, *supra,* this statement of purpose is somewhat narrower than the purposes of the Converse trust because it does not provide for the operation of convalescent homes or funding to other hospitals and convalescent homes. By adding those omitted purposes, the first two paragraphs of the 1985 amendment conformed Hahnemann's corporate purposes to those permitted by the Converse trust. Thus, that portion of the amendment cannot be said to be inconsistent with the Converse trust.

The third paragraph of the amended purposes, however, goes beyond the limits of the Converse trust to include participation "in any activity that promotes the health of the general public . . . ." The Hahnemann board may not unilaterally amend the Converse trust. Consequently, to the extent that this new purpose is inconsistent with the Converse trust, it breaks the promise of art. XX of the by-laws to donors of unrestricted funds that their donations would not be devoted to purposes inconsistent with the Converse trust. Consequently,

Hahnemann and the board will violate their fiduciary duties to those donors if they apply to the third, new purpose any proceeds of the sale attributable to donations from the Converse trust and from unrestricted donations made prior to September 18, 1985.[17] The unique, intertwined relationship of Hahnemann and the Converse trust prevents Hahnemann from applying previously donated funds to its newly amended purposes.

Although what we have said suffices to answer the issue, we take this opportunity to comment on Hahnemann's argument that, because under G. L. c. 180, § 7, it may amend its purposes to include any charitable purpose, it may apply its unrestricted funds to any charitable purpose which, by amendment, it includes in its charter. Hahnemann's reading of G. L. c. 180, § § 6 and 7, would, in effect, grant to charitable corporations unfettered discretion to apply funds to any charitable purpose. By simply amending its charter purposes, a charitable corporation would itself be able to exercise the power to devote funds to new charitable purposes whenever the trustees decided to do so, without any requirement that the new purposes be similar and not contradictory. The public could not be assured that funds it donated would be used for similar public charitable purposes.[18] Further, the corporation would be able to evade dissolution by reconstituting itself and directing all funds to its newly stated purposes. Such an interpretation also might eviscerate the Attorney General's power and responsibility to "enforce the due application of [charitable] funds . . . and prevent breaches of trust in the administration thereof." G. L. c. 12, § 8.

This matter is remanded to the county court for entry of a judgment consistent with this opinion.

*So ordered.*

---

[17] If the third purpose is otherwise valid, Hahnemann may, of course, use unrestricted donations given after September 18, 1985, for that purpose.

[18] As the Attorney General, colorfully, but no doubt correctly, observes in his reply brief, "those who give to a home for abandoned animals do not anticipate a future board amending the charity's purpose to become research vivisectionists."